1  Dillon E. Jackson WSBA #1539
2  Foster Pepper PLLC
   1111 Third Avenue, Suite 3400
3  Seattle, Washington 98101-3299
   Telephone:     (206) 447-4400
4  Facsimile No.: (206) 447-9700

5  G. Larry Engel (*pro hac admission pending*)
6  MORRISON & FOERSTER LLP
   425 Market Street
7  San Francisco, California 94105-2482
   Telephone:     (415) 268-7000
8  Facsimile No.: (415) 268-7522

9  Proposed Counsel for
   AMERICANWEST BANCORPORATION
10

11

12               UNITED STATES BANKRUPTCY COURT

13                 EASTERN DISTRICT OF WASHINGTON

14

15  In re                            Case No. 10-06097-PCW-11

16  AMERICANWEST                      Chapter   11
    BANCORPORATION,
17                                    **MOTION OF AWBC FOR ENTRY**
              Debtor.                 **OF ORDER (I) AUTHORIZING**
18                                    **AWBC TO OBTAIN**
                                      **POSTPETITION FINANCING ON A**
19                                    **SENIOR SECURED,**
                                      **SUPERPRIORITY BASIS; AND**
20                                    **(II) AUTHORIZING THE USE OF**
                                      **CASH COLLATERAL**
21

22

23

24

25

26

MOTION FOR DIP FINANCING                          FOSTER PEPPER PLLC
                                                  1111 THIRD AVENUE, SUITE 3400
                                                  SEATTLE, WASHINGTON 98101-3299
                                                  PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

JURISDICTION AND VENUE ...............................................................3

BACKGROUND ........................................................................................3

    A.    General Background ....................................................3

    B.    Factors Leading to the Sale ......................................8

    C.    The Company's Efforts to Recapitalize ..................9

    D.    State and Federal Regulatory Actions.....................9

    E.    Entry into the APA...................................................13

    F.    Discussions with the Regulators ..........................14

    G.    The DIP Facility ......................................................15

RELIEF REQUESTED..............................................................................17

SUMMARY OF PRINCIPAL TERMS OF POSTPETITION
    FINANCING .................................................................................19

APPLICABLE AUTHORITY FOR APPROVAL OF DIP FACILITY...........21

    A.    Incurrence of Secured Debt Under Section 364(c).......................21

    B.    The DIP Facility Is Necessary to Preserve Assets of
        AWBC's Estate ........................................................23

    C.    The Terms of the DIP Facility Are Fair, Reasonable and
        Appropriate...............................................................24

    D.    Application of the Business Judgment Standard .........................25

    E.    The Use of Cash Collateral is Appropriate ..................................26

    F.    Support for Modification of Automatic Stay ................................26

FINAL APPROVAL SHOULD BE GRANTED ...........................................27

REQUEST FOR WAIVER OF STAY .........................................................28

NOTICE ...................................................................................................28

CONCLUSION .........................................................................................30

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co., Inc.)*,
   789 F.2d 1085 (4th Cir. 1986) ................................................................... 23

*In re Ames Dep't Stores, Inc.*,
   115 B.R. 34 (Bankr. S.D.N.Y. 1990) ...................................................... 24, 25

*In re The Crouse Group, Inc.*,
   71 B.R. 544 (Bankr. E.D. Pa. 1987) ......................................................... 22

*In re Delphi Corp.*,
   No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 5, 2007) ............................... 25

*In re Fortunoff Fine Jewelry and Silverware, LLC*,
   Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008) ..................... 25

*In re Garland Corp.*,
   6 B.R. 456 (B.A.P. 1st Cir. 1980) ............................................................ 22

*In re Monach Circuit Indus., Inc.*,
   41 B.R. 859 (Bankr. E.D. Pa. 1984) ......................................................... 22

*In re Sky Valley, Inc.*,
   100 B.R. 107 (Bankr. N.D. Ga. 1988) ...................................................... 23

*Resolution Trust Corp. v. Official Unsecured Creditors Comm. (In re
Defender Drug Stores, Inc.)*,
   145 B.R. 312 (B.A.P. 9th Cir. 1992) ........................................................ 24

*Richmond Leasing Co. v. Capital Bank, N.A.*,
   762 F.2d 1303 (5th Cir. 1985) ................................................................. 25

*Sapir v. CPQ Colorchrome Corp. (In re Photo Promotion Assocs., Inc.)*,
   87 B.R. 835 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d Cir. 1989) ............ 22

*Trans World Airlines v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*,
   163 B.R. 964 (Bankr. D. Del. 1994) ........................................................ 25

MOTION FOR DIP FINANCING -ii-

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

**STATUTES**

11 U.S.C.
    § 363(c)(1)-(2) ..................................................................................26
    § 364(c) ......................................................................................21, 22
    § 361 ...................................................................................1, 3, 17
    § 362 ......................................................................1, 3, 17, 18, 26
    § 363 ..................................................................................14, 26
    § 363(a) ......................................................................................18
    § 363(c) ........................................................................................2
    § 363(c)(1) ..............................................................................14, 26
    § 363(c)(2) ..................................................................................26
    § 364 ..................................................................................21, 23, 25
    § 364(c)(1) ..................................................................1, 2, 3, 17, 18
    § 364(c)(2) ..................................................................2, 17, 18, 22
    § 364(c)(3) ..................................................................1, 2, 3, 17, 19
    § 503(b) ....................................................................................2, 18
    § 506(c) ......................................................................................19
    § 507(a) ........................................................................................2
    § 1107 ..........................................................................................3
    § 1108 ..........................................................................................3

28 U.S.C.
    § 105 ...................................................................................1, 3, 17
    § 157 ..........................................................................................3
    § 157(b) ......................................................................................3
    § 1334 ..........................................................................................3
    § 1408 ..........................................................................................3
    § 1409 ..........................................................................................3

**OTHER AUTHORITIES**

FEDERAL RULES OF BANKRUPTCY PROCEDURE
    RULE 2002 ..............................................................................1, 3, 17
    RULE 4001(c) ......................................................................1, 3, 17, 28
    RULE 6004 ..................................................................................28
    RULE 9014 ..............................................................................1, 3, 17

MOTION FOR DIP FINANCING - iii

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

dc-619910

1 | LOCAL RULES FOR THE UNITED STATES BANKRUPTCY COURT FOR THE
2 | EASTERN DISTRICT OF WASHINGTON

Rule 4001-2 ............................................................................................1, 3, 17

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

MOTION FOR DIP FINANCING - iv

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

dc-619910

AmericanWest Bancorporation ("AWBC"), the debtor and debtor-in-possession in the above-captioned case (the "Case"), hereby moves this Court (the "Motion") pursuant to sections 105, 361, 362, 363(c)(2), and 364(c)(1), and 364(c)(3) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Eastern District of Washington (the "Local Rules"), for entry of an order (the "DIP Order"):

    (I)    authorizing AWBC to obtain postpetition financing pursuant to a debtor-in-possession credit agreement, substantially in the form annexed hereto as Exhibit A (as amended, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement") by and between AWBC, as borrower, and SKBHC Hawks Nest Acquisition Corp., as lender (together with its successors and assigns, the "DIP Lender"), and together with all other related agreements, documents, and instruments contemplated thereby (collectively, the "DIP Credit Documents"), including authorizing AWBC to borrow up to the principal aggregate sum of $2,000,000, plus all other interest, fees, and expenses due and payable under the DIP Credit Documents (the "Obligations"), such financing to be (A) secured by first-priority senior secured liens on all unencumbered tangible and intangible property of AWBC of any kind, as covered by the DIP Credit Documents (other than Avoidance Actions and the proceeds therefrom), subject only to the carve-out for fees of the Debtor's professionals (as more particularly defined in the DIP Credit

MOTION FOR DIP FINANCING - 1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

dc-619910

Agreement, the "Carve-Out"), pursuant to section 364(c)(2) of the Bankruptcy Code, and (B) secured by a perfected lien upon all tangible and intangible property of AWBC that is subject to and junior to the Carve-Out and the Permitted Liens (as defined in the DIP Credit Documents) pursuant to section 364(c)(3) of the Bankruptcy Code;

(II)     granting the DIP Lender superpriority administrative claims in the Case pursuant to section 364(c)(1) of the Bankruptcy Code, such claims to be senior in right of payment over any and all administrative expenses of the kinds specified in sections 503(b) and 507(a) of the Bankruptcy Code or otherwise, subject only to the Carve-Out (such credit facility being referred to herein as the "DIP Facility"); and

(III)    authorizing AWBC to use Cash Collateral (as defined below) pursuant to section 363(c) of the Bankruptcy Code.

At the hearing on this Motion, AWBC will request entry of the DIP Order substantially in the form attached hereto as Exhibit B. In support of this Motion, AWBC relies upon and incorporates by reference the *Declaration of Patrick J. Rusnak, Chief Executive Officer of AmericanWest Bancorporation, in Support of Chapter 11 Petition and First Day Pleadings*, filed with the Court concurrently herewith (the "Rusnak Declaration"). The facts described in the Rusnak Declaration are hereby incorporated into this Motion as though set forth herein in full. In further support of this Motion, AWBC, by and through its undersigned counsel, respectfully represents as follows:[1]

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings
(Footnote continued on next page)

MOTION FOR DIP FINANCING - 2

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

# JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 361, 362, 363(c)(2), and 364(c)(1), and 364(c)(3) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c) and 9014, and Local Rule 4001-2.

# BACKGROUND

**A.      General Background**

2.      On the date hereof (the "Petition Date"), AWBC filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding AWBC, including its business operations, its capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the Rusnak Declaration.

3.      AWBC continues to manage and operate its business as debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

4.      Founded in 1983, AWBC, headquartered in Spokane, Washington, is a Washington corporation registered as a bank holding company under the Bank Holding Company Act of 1956.  AWBC is the direct or indirect corporate parent of two non-debtor subsidiaries:  AmericanWest Bank (the "Bank"), a Washington state-chartered bank that is insured by the Federal Deposit Insurance Corporation ("FDIC") and wholly-owned by AWBC; and AmericanWest Holdings, Inc., a Washington corporation that is wholly-owned

ascribed to them in the Rusnak Declaration or in the DIP Order.

MOTION FOR DIP FINANCING - 3

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

by the Bank.  The Bank operates in Eastern and Central Washington and Northern Idaho, and in Utah where it conducts business under the tradename of "Far West Bank."  Unless otherwise indicated, references herein to the "Company" collectively refer to AWBC and the Bank.

5.    AWBC functions as a holding company for the Bank, which is its primary asset.  The Bank gathers deposits and provides loans to approximately 77,000 customers across the Inland Northwest through branches located primarily in Spokane, Yakima, Walla Walla, and the Tri-Cities area.  The Bank serves customers in a total of 58 branches, including a branch in Salt Lake City, Utah, and branches in suburban and rural communities in Eastern and Central Washington, Northern Idaho, and Utah.  As of the Petition Date, the Company collectively had approximately 540 employees across its 58 branches and two support facilities.

6.    The Bank offers agricultural loan products and commercial loan products to hundreds of farmers and small businesses across its market areas in Washington, Idaho, and Utah.  The Bank offers a variety of deposit accounts to both consumer and business customers, including checking accounts, money market demand accounts, and savings accounts.  Numerous services also provide the Bank's consumer and business customers with convenient bank access, including ACH origination, remote check capture (i.e., on-site imaging and electronic processing of checks), sweep accounts, and currency services.  The Bank also generates non-interest income by offering both consumer and business credit cards and merchant bankcard services through arrangements with third-party providers.

7.    The Bank and AWBC are highly regulated institutions.  The principal regulators of the Bank are the FDIC and the Washington Department

MOTION FOR DIP FINANCING - 4

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

of Financial Institutions (the "DFI").  The principal regulators of AWBC are the Board of Governors of the Federal Reserve System and the Federal Reserve Bank of San Francisco.  Unless context otherwise requires, references herein to the "Regulators" collectively refer to these four state and federal regulatory agencies.

8.      ***The Bank's Capital Structure and AWBC's TruPS.***  AWBC's 100% equity ownership in the Bank totals 429,000 issued and outstanding shares of common stock of the Bank, no par value (the "Shares").  No other shares of capital stock of the Bank are issued or outstanding.  All of the Shares are beneficially owned and held by AWBC, have been duly authorized and validly issued, are fully paid and nonassessable, have been issued in full compliance with all applicable securities laws and other applicable legal requirements, and are free and clear of any and all Encumbrances (as defined in the DIP Credit Agreement).

9.      As of September 30, 2010, AWBC had outstanding unsecured indebtedness totaling approximately $47.2 million,[2] consisting of: (a) four outstanding issuances of junior subordinated debentures issued to four statutory trusts (the "Trusts") that in turn issued their preferred securities, commonly known as Trust Preferred Securities or "TruPS," to investors; and (b) approximately $3,600 in trade debt.  AWBC's principal amount of junior subordinated debt was approximately $41.2 million, which backs exactly $40

---

[2]      This total includes the $6.0 million of accrued deferred interest relating to the issuance of TruPS.  Such interest, however, has not been capitalized and is not included in the principal balance of $41.2 million described herein.

MOTION FOR DIP FINANCING - 5

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

million of TruPS issued to investors.[3]  The accrued interest on the junior subordinated debentures totaled $6.0 million, payment of which has been deferred since September 2008 in accordance with the declarations of trust governing the subordinated indentures.  Wilmington Trust Company acts as trustee of two of the Trusts and U.S. Bank acts as trustee of the other two Trusts.

          10.    As detailed more specifically in the Rusnak Declaration, each of the four TruPS issuances, corresponding to AWBC's junior subordinated debentures (the "AWBC TruPS"), was sold as a block into a separate limited liability company (each a "PreTSL").[4]  Each PreTSL issued several tranches, or priorities, of notes (e.g., Class A-1 Senior Notes, Class A-2 Senior Notes, Mezzanine Notes, and Subordinated Notes) to numerous institutional and accredited individual investors through offerings exempt from securities registration.  Each PreTSL's notes are collateralized with the TruPS

---

[3]    The excess amount of the debentures over the amount of the TruPS represents the common equity of the Trusts, which is held by AWBC.  The common equity interest has no economic value.

[4]    "PreTS$^{SM}$" is a registered service mark, derived from "Preferred Term Securities," another term for trust preferred securities.  "PreTSL" is the common shorthand for each of the limited liability companies that has issued TruPS collateralized by AWBC's junior subordinated debentures, with each such company having a name in the form of "Preferred Term Securities [__] Limited" with the "[__]" representing the Roman numeral designating the specific entity.

MOTION FOR DIP FINANCING - 6

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

held by that PreTSL, along with TruPS and debt obligations of other entities. The PreTSLs are unmanaged, pooled collateralized debt obligations (or "CDOs"), with Bank of New York Mellon ("BNYM") acting as CDO trustee under the indenture applicable to each PreTSL. BNYM has limited authority to make decisions with respect to the CDOs and the collateralized assets. Direct ownership of the notes issued by the CDOs is widely dispersed, and identifying the ultimate investors is extremely difficult.

11. ***The Company's Objectives.*** As described below, the Bank has been subject to significant regulatory action by the Regulators for over two years. If AWBC is unable to recapitalize the Bank promptly, it faces possible seizure of the Bank by the DFI and appointment of the FDIC as receiver. Based on the ratio of asset size to loss to the FDIC's deposit insurance fund for all bank failures during 2010, a receivership for the Bank could result in a $330 million dollar loss to the FDIC's Deposit Insurance Fund—resulting in a total loss for AWBC and its creditors.

12. AWBC has commenced this Chapter 11 case as the only plausible mechanism to recapitalize the Bank while protecting, to the greatest extent possible, AWBC's creditors. By commencing this Chapter 11 case, AWBC hopes to sell its 100% equity ownership in the Bank and the Other Purchased Assets (as defined in the APA described below) on an expedited basis, concurrently with the recapitalization of the Bank by the Purchaser (defined below) in order to comply with regulatory requirements.

13. Absent a sale of the Shares and the Other Purchased Assets to a sufficiently capitalized and qualified bank or bank holding company concurrent with a significant capital infusion by the Purchaser, the Bank will not meet the Regulators' capital requirements and will not be financially viable

MOTION FOR DIP FINANCING - 7

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400   FAX (206) 447-9700

dc-619910

on an ongoing basis.  The Purchaser presents the Bank with a solution to this dilemma—a proposed acquirer with the requisite financial resources to acquire and recapitalize the Bank and with the regulatory posture to obtain regulatory approval for the transaction (having been approved on October 26, 2010 by the Federal Reserve Board to become a bank holding company).

14.     Any course of action other than a sale of the Shares and the Other Purchased Assets will preclude the return of any value to the creditors or shareholders of AWBC, and would have adverse consequences for the Bank's customers, communities, and employees. An expedited sale of the Shares and the Other Purchased Assets at the best possible price, with the Purchaser's commitment to concurrently recapitalize the Bank, is therefore the only feasible way to establish the Bank as a viable institution on an ongoing basis and protect, to the greatest extent possible, AWBC's creditors and other stakeholders.

**B.     Factors Leading to the Sale**

15.     The current financial and credit crisis — resulting in approximately 250 nationwide bank failures since 2008[5] — has significantly hampered the Bank's business and ability to meet certain state and federal regulatory requirements for capital, profitability, and credit quality.  Beginning approximately three years ago, effects from the housing crisis, including tumbling home prices, soaring loan defaults, and high unemployment rates,

---

[5]     Twenty-five banks failed and were taken over by the FDIC in 2008, while 140 failed in 2009.  Over 130 banks have failed thus far in 2010.  *See* http://www.fdic.gov/bank/individual/failed/banklist.html.

MOTION FOR DIP FINANCING - 8

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

began to take their toll on the Bank's, and ultimately the Company's, financial condition.

**C.     The Company's Efforts to Recapitalize**

16.     Beginning in 2007, the Company's management initiated efforts to deal with asset quality problems in its loan portfolio, reduce expenses, build capital reserves, and take other appropriate actions to return the Bank to profitability and reduce its risk profile. However, in early 2008 it became clear to the Company's management and Board of Directors that additional capital would be required to address the Bank's financial problems.

17.     Beginning in 2008 and continuing to the present, the Company has undertaken significant efforts to raise additional capital, including efforts to sell Bank assets, or to sell AWBC or the Bank to another financial institution. AWBC's multi-phased marketing effort is described more fully in the Rusnak Declaration.

**D.     State and Federal Regulatory Actions**

18.     The Company's inability heretofore to raise additional capital has been a major cause of increased scrutiny and action by the Regulators and creates significant risk that the Bank will be seized if not recapitalized on an expedited time frame consistent with the transactions described herein. A recapitalization of the Bank is critical if the Bank is to be restored to financial viability on an ongoing basis.

19.     As a result of the Bank's announcement that it had ceased to be "well-capitalized" as of June 30, 2008, the DFI conducted an off-site interim examination of the Bank's financial health. This led to the first of a series of increasingly serious enforcement actions against the Bank or AWBC by the FDIC, DFI, and the Federal Reserve Bank of San Francisco ("FRB"), which

MOTION FOR DIP FINANCING - 9

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

10-06097-PCW11    Doc 4    Filed 10/28/10    Entered 10/28/10 02:23:56    Pg 14 of 35

regulates AWBC as a bank holding company.  First, the DFI issued a Supervisory Directive against the Bank effective August 8, 2008 (the "DFI Directive").  The DFI Directive required the Bank to provide periodic liquidity and credit quality reports, update the DFI regarding the status of liquidity planning and previously announced capital raising initiatives, notify the DFI about significant changes in management and financial condition, retain a permanent Chief Executive Officer, and seek prior written consent of the DFI before paying dividends.[6]

20.    Second, on February 2, 2009, the FDIC issued a Prompt Corrective Action Notification (the "PCA Notification") to the Bank. The PCA Notification was issued under the Prompt Correction Action provisions of the FDIA and FDIC regulations.  The FDIA and FDIC regulations identify five capital categories for banking institutions — well-capitalized, adequately capitalized, undercapitalized, significantly undercapitalized, and critically undercapitalized.  The PCA Notification formally advised the Bank that it was significantly undercapitalized, which is the next-to-lowest capital category.  As such, the Bank was required to submit a capital restoration plan (the "Capital Restoration Plan"), and it became subject to a wide range of restrictions relating to its senior management team, management compensation, dividends, loan loss reserves, reductions in troubled assets, liquidity, asset growth, and other aspects of its business.  In response to the PCA Notification, the Bank submitted its Capital Restoration Plan to the FDIC on March 20, 2009, which the Bank

_____

[6]    On September 17, 2009, the DFI notified the Bank that the DFI Directive was being rescinded, as it had been effectively superseded by the PCA Directive discussed below.

MOTION FOR DIP FINANCING - 10

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

1  subsequently amended on July 2, 2009.  That Capital Restoration Plan was
2  rejected.

3       21.    Third, on May 8, 2009, the Bank entered into a Stipulation
4  and Consent to the Issuance of an Order to Cease and Desist (the "Stipulation")
5  with the FDIC and the DFI.  Pursuant to the Stipulation, the FDIC and the DFI
6  issued an Order to Cease and Desist (the "Cease and Desist Order") against the
7  Bank on May 11, 2009.  The Cease and Desist Order required, among other
8  things, that the Bank take actions necessary to return to the "well-capitalized"
9  category by September 9, 2009.

10       22.    Fourth, on September 15, 2009, AWBC entered into a
11 Written Agreement (the "Written Agreement") with the FRB, imposing on
12 AWBC restrictions and requirements substantially similar to those contained in
13 the PCA Notification and the Cease and Desist Order, including the obligation
14 to submit a capital restoration plan.

15       23.    Fifth, on February 26, 2010, the Bank received a Prompt
16 Corrective Action Directive (the "PCA Directive") from the FDIC.  The PCA
17 Directive directed the Bank to recapitalize within 30 days of receipt, and
18 reiterated various requirements previously imposed on the Bank by the Cease
19 and Desist Order.

20       24.    Taken together, the Cease and Desist Order and the PCA
21 Directive required the Bank, among other things, to recapitalize or accept an
22 offer to be acquired by or combine with another financial institution by March
23 28, 2010.

24       25.    Although the Company's management has undertaken all
25 actions within its power to comply with all aspects of the PCA Notification, the
26 Cease and Desist Order, the Written Agreement, and the PCA Directive

MOTION FOR DIP FINANCING - 11

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

(collectively, the "<u>Regulatory Orders</u>"), the Company has to date been unable to comply with their most important terms — the recapitalization or sale of the Bank. Full satisfaction of the Regulatory Orders will depend on raising a significant amount of additional capital. A recapitalization of the Bank is the only path for restoring the Bank to financial viability on an ongoing basis.

26. The Bank continues to remain in the significantly undercapitalized capital category. Any undercapitalized banking institution, and particularly one that has failed to comply with an order to recapitalize, is subject to a wide variety of enforcement remedies by the FDIC, including seizure by the DFI and placement in an FDIC receivership. If this occurs, past experience uniformly points to an unhappy set of results: the shareholders' investment in the banking institution immediately will be wiped out (with the creditors of the shareholders being adversely affected as well), the institution will be sold or liquidated at a substantial loss to the FDIC's deposit insurance fund, many of the institution's employees will lose their jobs, customers with deposits in excess of FDIC insurance limits are at risk of losing that portion of their deposits, borrowers may be deprived of needed financing, and the communities served by the institution will be adversely impacted by its loss.

27. Following the seizure, the FDIC, as receiver, may bring civil actions against directors, officers, parent companies, and third parties in an effort to recover losses for the receivership estate. The FDIC also can exercise other enforcement remedies which, depending upon the circumstances, may include the imposition of severe civil money penalties against the institution, its parent companies, officers, directors, employees, and other institution-affiliated parties; removal of directors, officers, and other institution-affiliated parties from participating in the affairs of the institution (or, indeed, participating in the

MOTION FOR DIP FINANCING - 12

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

affairs of any other insured depository institution and certain government agencies); or terminating the institution's FDIC insurance.

28.     During the current financial crises, very few, if any, banking institutions that have received prompt corrective action directives have been able to avoid seizure and FDIC receivership and loss of the shareholders' complete investment.  A review of prompt corrective action directives issued since January 2009 in the FDIC's Western Region — in which the Bank is included — indicates that 26 of the 30 banks that received such directives were ultimately seized by the FDIC.  On average, the time between the deadline for compliance with a prompt corrective action directive and the seizure of the institution was only 68 days.  The Bank has already gone over 240 days since it failed to comply with the PCA Directive's capital raising requirement, which AWBC believes is indicative of the FDIC's and DFI's agreement not to object to the Sale.  The period of time that the Bank has continued to exist, when contrasted with the experience of other banking institutions in the Western Region, is unique.  The experience of these other banks demonstrates that no banking institution that is significantly undercapitalized could reasonably expect to remain open for such a period of time.

**E.     Entry into the APA**

29.     Following its comprehensive marketing efforts, after 30 months of strategic analysis and negotiations, including discussions with the Regulators and the FRB, the Company, in consultation with Sandler O'Neill & Partners, L.P., a recognized investment banking firm with particular experience with respect to financial institutions, retained to advise and assist the Company in raising additional capital, identified the bid by the DIP Lender (in its capacity as purchaser, the "Purchaser"), for the Shares and the Other Purchased Assets

MOTION FOR DIP FINANCING - 13

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

as the only viable way to accomplish the necessary recapitalization of the Bank and to protect the interests of AWBC's creditors. After extensive negotiations regarding the terms and conditions thereof, AWBC and the Purchaser have agreed, in principle, to the key terms of the sale of the Shares to the Purchaser proposed contemporaneously herewith (the "Sale"), and have executed an asset purchase agreement with the Purchaser (the "APA"), which remains subject to this Court's approval.

30.     If effectuated, the Sale will recapitalize the Bank, ensure the Bank's regulatory compliance, maximize the value available for AWBC's creditors, preserve hundreds of jobs, and save the FDIC many millions of dollars, while simultaneously allowing the Bank to continue serving the needs of thousands of individuals and businesses in the Bank's market areas.

**F.     Discussions with the Regulators**

31.     During the months preceding this Chapter 11 filing, the Company's management has engaged in numerous detailed discussions and in-person meetings with the Regulators to keep them apprised of its recapitalization efforts. Many of these conversations focused on the requirements of the Regulators for approval of a sale and recapitalization of the Bank, and whether the FDIC and DFI would defer regulatory action long enough to allow recapitalization to proceed. Generally, throughout the process, the Regulators have remained supportive of the Company's recapitalization efforts. Within the last three months, the Company introduced to the Regulators, in a number of meetings, the prospect of a Section 363 bankruptcy sale as the potential key to overcome the obstacles that the Company had encountered in its recapitalization efforts. Shortly thereafter, the Purchaser emerged as a potential party to such a transaction, and thereafter both

MOTION FOR DIP FINANCING - 14

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

representatives of the Purchaser and management of the Company explored in depth with the Regulators the proposed transaction, including the bankruptcy sale process that is the subject of this Motion.

32.     As the transaction will require regulatory approval, the Regulators will need to evaluate the regulatory applications that Purchaser contemplates submitting within a matter of days before passing on the transaction.  However, the Regulators have not objected to this bankruptcy filing or otherwise to the path on which the Company has embarked to secure adequate capital for the Bank.

**G.     The DIP Facility**

33.     In order to help reduce the risk of adverse supervisory action before a sale of the Shares and the Other Purchased Assets can be consummated, AWBC has negotiated the DIP Facility to obtain the working capital necessary to fund AWBC's Chapter 11 case.  Among other features, the DIP Facility includes certain safeguards for the DIP Lender's protection as a debtor-in-possession lender, since as a lender it bears the full risk of any decline in the value of the Shares and the Other Purchased Assets that would serve as its collateral.

34.     In accordance with the relief sought in this Motion and the terms of the DIP Order, the DIP Lender has agreed to allow AWBC to utilize the cash collateral generated by the DIP Lender's collateral.  The DIP Lender has also agreed to provide AWBC with debtor-in-possession financing under the DIP Credit Agreement, secured by a senior secured, superpriority lien on AWBC's assets and the proceeds thereof.

35.     AWBC has an immediate need to access additional operating capital in order to fund the day-to-day operating expenses of its

MOTION FOR DIP FINANCING - 15

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

business, including payments to remaining employees and professionals sought to be retained in this Chapter 11 case. Such payments are necessary to sustain the going-concern value of the Bank and ensure its future viability. Moreover, access to additional operating capital will enable AWBC to demonstrate to its regulating entities, vendors, suppliers, and employees that it has sufficient liquidity to continue to operate its business, maintain its properties, and pay necessary expenses during the crucial first days of its reorganization efforts and the pendency of this Chapter 11 case.

36. In order to obtain much-needed capital and help reduce the risk of adverse regulatory intervention before consummation of the Sale, AWBC negotiated the DIP Credit Agreement with the Purchaser through a good faith and arm's-length process. AWBC believes that the DIP Credit Agreement contains terms that are in the best interests of AWBC, its estate, and other parties-in-interest.

37. As set forth in the DIP Credit Agreement, and subject to the terms and conditions thereof, Purchaser has agreed to provide the DIP Facility with a total commitment of up to $2 million.

38. Approval of the DIP Credit Agreement will not only ensure that AWBC's estate will be administratively solvent, but will also help maximize ultimate recovery for AWBC creditors. Without authorization of the DIP Credit Agreement, AWBC will be unable to fund its Chapter 11 case, or pay for services and expenses necessary to preserve and maximize the value of AWBC's business. Indeed, absent sufficient funds to support its business, the value of the Shares will quickly erode, as will AWBC's ability to consummate the Sale. Moreover, Bank seizure and FDIC receivership would be imminent,

MOTION FOR DIP FINANCING - 16

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

dc-619910

1 causing irreparable harm to AWBC's estate, employees, creditors, customers,
2 and other stakeholders.

3                                **RELIEF REQUESTED**[7]

4           39.     By this Motion, AWBC requests that the Court grant the
5 following relief:

6           (a)     pursuant to Bankruptcy Code sections 105, 361, 362,
7 364(c)(1), 364(c)(2), and 364(c)(3), Bankruptcy Rules 2002, 4001(c) and 9014,
8 and Local Rule 4001-2:

9                          (i)     authorization for AWBC to obtain postpetition loans,
10                                 advances, and other financial accommodations under
11                                 the DIP Credit Documents in the amount of up to
12                                 $2 million in accordance with the budget attached to
13                                 the DIP Order (the "Budget");[8]
14                         (ii)    authorization for AWBC to comply with the DIP
15                                 Credit Documents in all respects, and approval of all
16                                 of the terms and conditions of the DIP Credit
17                                 Documents;

18

19

---

20  [7]      The description of the terms of the proposed DIP Order provided in this
21 Motion is intended only as a summary.  In the event of any inconsistency
22 between the descriptions set forth herein and the terms of the proposed DIP
23 Order, the terms of the DIP Order shall govern.

24  [8]      Obligations incurred under the DIP Credit Documents are referred to
25 herein as the "DIP Obligations."

26

MOTION FOR DIP FINANCING - 17

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

1                    (iii)     subject to the Carve-Out, grant the DIP Lender

2                                superpriority administrative expense claims with

3                                respect to the DIP Facility Collateral (defined below)

4                                with priority over all other administrative expenses of

5                                the kind specified in Bankruptcy Code section 503(b)

6                                or 507(b) (the "Superpriority Claims") pursuant to

7                                section 364(c)(1) of the Bankruptcy Code with respect

8                                to all the DIP Obligations;

9                    (iv)    subject to the Carve-Out, grant the DIP Lender, as

10                                security for the DIP Obligations, perfected, valid,

11                                enforceable, and non-avoidable first-priority security

12                                interests under Bankruptcy Code section 364(c)(2)

13                                (the "364(c)(2) Liens") in all tangible and intangible

14                                assets of AWBC, including without limitation all

15                                issued and outstanding Shares of the Bank now owned

16                                or hereafter acquired by AWBC as covered by the

17                                DIP Credit Documents (the "Assets") as well as all

18                                proceeds, products, rents, and profits thereof,

19                                including all cash from the payment of dividends or

20                                interest on the Shares, together with all other property

21                                described in Bankruptcy Code section 363(a) and

22                                applicable case law constituting "cash collateral" (the

23                                "Cash Collateral" and together with the Assets, the

24                                "DIP Facility Collateral"), not otherwise encumbered

25                                by Permitted Liens (as defined in the DIP Credit

26                                Agreement);

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

| | |
|---|---|
| 1 | (v) subject to the Carve-Out, grant the DIP Lender, as |
| 2 | security for the DIP Obligations, the best available |
| 3 | junior, perfected security interest under Bankruptcy |
| 4 | Code section 364(c)(3) (the "364(c)(3) Liens") in all |
| 5 | DIP Facility Collateral which is subject to the |
| 6 | Permitted Liens (collectively with the 364(c)(2) Liens |
| 7 | and the 364(c)(3) Liens, the "DIP Facility Liens"); |
| 8 | and |
| 9 | (vi) waiver of AWBC's right to surcharge the DIP Facility |
| 10 | Collateral under Bankruptcy Code section 506(c) |
| 11 | except as otherwise contemplated by the budget |
| 12 | attached hereto as Exhibit C; and |
| 13 | (b) the granting of certain related relief. |
| 14 | **SUMMARY OF PRINCIPAL TERMS OF POSTPETITION FINANCING** |
| 15 | 40. AWBC and the DIP Lender negotiated the DIP Credit |
| 16 | Agreement, through a good faith and arm's-length process. The following |
| 17 | summary sets forth the material terms of the DIP Facility.[9] |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | [9] This summary of the DIP Credit Agreement is provided for the benefit of |
| 23 | the Court and other parties in interest. A copy of the DIP Credit Agreement is |
| 24 | attached hereto as Exhibit A and incorporated herein by reference. Capitalized |
| 25 | terms used in this summary but not otherwise defined herein shall have the |
| 26 | meanings set forth in the DIP Credit Agreement. |

MOTION FOR DIP FINANCING - 19

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

dc-619910

| | |
|---|---|
| **Commitment Amount:** | Aggregate principal amount not to exceed $2,000,000. |
| **Interest Rates:** | 9.00% per annum; provided, however, that if the scheduled maturity is extended to a date 60 days after the date of the DIP Credit Agreement, the interest rate will be 10.0% per annum starting on the 45th day after the date of the DIP Credit Agreement and thereafter. |
| **Term and Repayment:** | <u>Scheduled Maturity Date</u>: 45 days after the date of the DIP Credit Agreement (projected December 2010).<br><br>AWBC may extend the scheduled maturity date to 60 days after the date of the DIP Credit Agreement if not in default, if representations and warranties remain true and correct in all material respects, and if AWBC pays a fee of 2.0% of the outstanding loan amount. |
| **Procedure for Borrowing:** | Delivery of loan notice no later than 10:00 a.m. (New York City time) on the closing date. DIP Lender to wire funds no later than 3:00 p.m. (New York City time) that day. |
| **Collateral:** | All of the assets of AWBC (subject to customary exclusions), including all of the issued and outstanding shares of common stock of the Bank. |
| **Priority:** | DIP Lender to be granted a superpriority administrative expense claim, subject to customary Carve-Out for fees of AWBC's retained professionals, and other specified bankruptcy filing costs. |
| **Representations and Warranties:** | Due organization, existence, and compliance with law; due authorization to enter agreement, and enforceability of obligations; no legal bar to obligations; no default; financial statements prepared in accordance with GAAP; budget prepared and delivered in good faith; AWBC has good and marketable title to collateral; loan documents sufficient to provide superpriority lien. |

MOTION FOR DIP FINANCING - 20

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

10-06097-PCW11    Doc 4    Filed 10/28/10    Entered 10/28/10 02:23:56    Pg 25 of 35

| | |
|---|---|
| **Conditions Precedent:** | Delivery of executed loan documents, including collateral documents and opinion of counsel; payment of fees and expenses of DIP Lender, including DIP Lender's counsel; governmental and third-party authorizations; order entered by Bankruptcy Court approving the loan; all "first-day" orders in form and substance approved by DIP Lender; submission of initial budget; representations and warranties true and correct; no event of default. |
| **Key Covenants:** | AWBC to provide further assurances to effectuate agreement; proceeds to be used only for working capital and other approved purposes; AWBC to preserve corporate existence and continue business; AWBC to provide updated 13-week budget on a weekly basis; restrictions on additional liens, indebtedness, investments, dispositions, transactions with affiliates, or accounting changes; no fundamental changes; no speculative transactions; no formation of new subsidiaries. |
| **Key Events of Default:** | Failure to pay principal when due; inaccuracy of representations or warranties; immediate default for breach of superpriority or security provisions or covenants; 5-day notice with opportunity for cure for other breaches. |
| **Governing Law:** | New York. |

## APPLICABLE AUTHORITY FOR APPROVAL OF DIP FACILITY

### A.    Incurrence of Secured Debt Under Section 364(c)

41.    AWBC's reorganization efforts hinge on access to postpetition financing.  Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit outside the ordinary course of business, (c) obtaining credit with specialized priority or on a secured basis and (d) obtaining secured credit by granting a senior or pari passu lien on already encumbered property.  In other words, section 364 is "structured with an escalating series of inducements . . ." that may be offered to attract postpetition

MOTION FOR DIP FINANCING - 21

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

financing. *Sapir v. CPQ Colorchrome Corp. (In re Photo Promotion Assocs., Inc.)*, 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d Cir. 1989).

42.     Accordingly, if a debtor cannot obtain postpetition financing on an unsecured basis, a bankruptcy court may authorize such debtor to obtain credit or incur debt on a superpriority administrative expense status, secured by a senior lien on unencumbered property or secured by a junior lien on encumbered property. *See* 11 U.S.C. § 364(c); *In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) authorized, after notice and a hearing, upon showing that unsecured credit unobtainable); *In re Monach Circuit Indus., Inc.*, 41 B.R. 859, 862 (Bankr. E.D. Pa. 1984) ("[sections] 364(c)(1), (c)(2) and (c)(3) allow a court to grant to a creditor a priority over administrative expenses or a lien . . ."); *In re The Crouse Group, Inc.*, 71 B.R. 544, 550 (Bankr. E.D. Pa. 1987) (requiring debtor to show reasonable effort to seek financing under section 364(a) or (b) before incurring superpriority administrative expense).

43.     As set forth above and in the Rusnak Declaration, AWBC does not believe that it would have been able to obtain postpetition financing on terms more favorable than those contained in the DIP Credit Agreement from any source other than the DIP Lender.  The ongoing oversight by the Regulators, the risk of regulatory action, and the uncertainty surrounding the Bank's recapitalization all have made it difficult for AWBC to attract financing. Moreover, the DIP Facility is an important feature of the Sale proposed in connection herewith and serves as a material portion of the Purchaser's consideration, since the Purchaser will have the option to credit bid the indebtedness owing under the DIP Facility as part of the purchase price.  Such

MOTION FOR DIP FINANCING - 22

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

financing would not be practicable by a third-party lender in light of the DIP
Lender/Purchaser's unique knowledge of AWBC, particularly given its
extensive due diligence in connection with the Sale.

44.     Based on all the foregoing, AWBC believes that it would not
have been able to obtain debtor-in-possession financing on more favorable
terms from other sources.  *See, e.g., Bray v. Shenandoah Fed. Savs. & Loan
Ass'n (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (section
364 "imposes no duty to seek credit from every possible lender before
concluding that such credit is unavailable."); *In re Sky Valley, Inc.*, 100 B.R.
107, 113 (Bankr. N.D. Ga. 1988) ("[I]t would be unrealistic and unnecessary to
require [the debtor] to conduct an exhaustive search for financing" when few
lenders likely can or will provide the necessary credit.).

45.     Under these circumstances, this Court has ample authority to
authorize AWBC to obtain debtor-in-possession financing on the terms set forth
in the DIP Credit Agreement.

**B.     The DIP Facility Is Necessary to Preserve Assets of AWBC's Estate**

46.     As noted above, AWBC has an immediate need to access
additional operating capital.  Access to additional operating capital will enable
AWBC to demonstrate to its regulating entities, vendors, suppliers, and
employees that it has sufficient liquidity to continue to operate its businesses,
maintain its properties, and pay necessary expenses during the crucial first days
of its reorganization efforts and the pendency of this Chapter 11 case.

47.     Unless this Court authorizes the DIP Credit Agreement,
AWBC will be unable to fund its Chapter 11 case, or pay for services and
expenses necessary to preserve and maximize the value of AWBC's business.
Indeed, absent sufficient funds to support its business, AWBC's ability to

MOTION FOR DIP FINANCING - 23

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

consummate the Sale will be significantly hampered and the value of the Shares will quickly erode.

**C.    The Terms of the DIP Facility Are Fair, Reasonable and Appropriate**

48.    In order to obtain much-needed capital and help reduce the risk of adverse regulatory intervention before consummation of the Sale, AWBC negotiated the DIP Credit Agreement with the Purchaser through a good-faith, arm's-length process.  AWBC believes that the DIP Credit Agreement contains terms that are in the best interests of AWBC, its estate, and other parties-in-interest.

49.    The terms and conditions of the DIP Facility are fair, reasonable and appropriate under the circumstances.  AWBC believes, in its reasonable business judgment, that the DIP Facility is the best financing option available under the present circumstances, particularly given the expedited timeframe within which it must meet the Regulators' concerns.  Further, with the inclusion of the Carve-Out, the DIP Facility would not directly or indirectly deprive AWBC's estate or other parties-in-interest of possible rights and powers by inappropriately restricting the services for which professionals may be paid in this case.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (Courts generally "insist on a carve out" for professional fees for AWBC, committee and possible trustee "in order to preserve the adversary system.  Absent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced.").  Likewise, the various fees and charges required under the DIP Facility are reasonable and appropriate under the circumstances, as they have been capped at $100,000.  *See Resolution Trust Corp. v. Official Unsecured Creditors Comm. (In re Defender Drug Stores,*

MOTION FOR DIP FINANCING - 24

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

*Inc.)*, 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992) (approving financing facility

pursuant to section 364 that included a lender "enhancement fee"); *see also,*

*e.g.*, *In re Fortunoff Fine Jewelry and Silverware, LLC*, Case No. 08-10353

(JMP) (Bankr. S.D.N.Y. Feb. 22, 2008); *In re Delphi Corp.*, No. 05-44481

(RDD) (Bankr. S.D.N.Y. Jan. 5, 2007).

**D.      Application of the Business Judgment Standard**

50.     Bankruptcy courts routinely defer to a debtor's business

judgment on most business decisions, including the decision to obtain credit or

incur debt, unless such decision fails the arbitrary and capricious standard. *See*

*Trans World Airlines v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*,

163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that approval of interim loan,

receivables facility and asset-based facility "reflect[ed] sound and prudent

business judgment . . . [was] reasonable under the circumstances and in the best

interests of [the debtor] and its creditors"); *Ames*, 115 B.R. at 40 (The court

should defer to Debtor's "reasonable business judgment . . . so long as the

financing agreement does not . . . leverage the bankruptcy process" and its

purpose is to benefit the estate rather than another party-in-interest.).  Indeed,

"[m]ore exacting scrutiny [than the business judgment standard] would slow the

administration of [AWBC's] estate and increase its cost, interfere with the

Bankruptcy Code's provision for private control of administration of the estate,

and threaten the court's ability to control in case impartially." *Richmond*

*Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

51.     AWBC exercised its reasonable business judgment in

determining that the DIP Facility was appropriate and the best available

financing option under the circumstances and has satisfied the legal

requirements to incur the DIP Obligations on the terms and conditions set forth

MOTION FOR DIP FINANCING - 25

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

10-06097-PCW11    Doc 4    Filed 10/28/10    Entered 10/28/10 02:23:56    Pg 30 of 35

in the DIP Credit Agreement.  AWBC believes that the DIP Credit Agreement contains terms that are fair, reasonable, and in the best interests of AWBC and its estate.  Accordingly, AWBC respectfully submits that it should be authorized to enter into the DIP Credit Agreement and obtain access to the DIP Facility from the DIP Lender on the priming lien, secured and administrative "superpriority" basis described herein.

**E.     The Use of Cash Collateral is Appropriate**

52.     The use of estate property by a debtor-in-possession is governed by section 363 of the Bankruptcy Code.  Section 363(c)(1) provides that a debtor may use estate assets in the ordinary course of its business without notice or a hearing.  11 U.S.C. § 363(c)(1).  Section 363(c)(2), however, permits a debtor to use, sell or lease cash collateral only if the entity with an interest in the cash collateral consents or the Court authorizes such use.  11 U.S.C. § 363(c)(1)-(2).  The DIP Lender has consented to AWBC's use of the Cash Collateral securing the DIP Facility pursuant to the terms of the proposed DIP Order.  Therefore, this Court has authority to enter the DIP Order pursuant to section 363(c)(2) of the Bankruptcy Code.

**F.     Support for Modification of Automatic Stay**

53.     As set forth more fully in the proposed DIP Order, the proposed DIP Facility and the DIP Credit Agreement contemplate a modification of the automatic stay established pursuant to section 362 of the Bankruptcy Code to permit the DIP Lender, in its sole discretion, to:  (a) file financing statements, mortgages, deeds of trust, assignments of leases and rents or similar documents to evidence the DIP Facility Liens; (b) give AWBC any notice provided for in the DIP Credit Documents; (c) exercise other rights or remedies under the DIP Credit Documents (including the exercise of rights and

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

remedies pertaining to the DIP Facility Liens on the DIP Facility Collateral) upon the occurrence of an Event of Default, after giving five (5) business days notice in writing, served by hand or telefax upon the Court, AWBC and its counsel (and, if appointed, any trustee for AWBC), counsel to any official committee appointed in this case, and the office of the United States Trustee; and (d) take such other actions permitted or required under the DIP Credit Documents.

54. Stay modification provisions such as these are ordinary and usual features of postpetition financing facilities and, in AWBC's business judgment, are reasonable under the present circumstances. Accordingly, AWBC respectfully requests that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the DIP Order and the DIP Credit Documents.

## FINAL APPROVAL SHOULD BE GRANTED

55. AWBC seeks approval of the relief requested in this Motion in light of the immediate and irreparable harm that AWBC's estate will incur unless it obtains the financing necessary to sustain its business and fund the Case. Indeed, AWBC anticipates accessing the DIP Facility as soon as practicable after the DIP Order is entered. Access to the DIP Facility will enable AWBC to demonstrate to its vendors, suppliers, employees, lenders and regulating entities that it has sufficient working capital and liquidity to continue to operate its business, maintain its properties and pay necessary expenses during the crucial first days of its reorganization efforts and the pendency of AWBC's Case.

56. Accordingly, AWBC submits that entry of the DIP Order, in the time periods and for the financing amounts requested herein, is appropriate.

MOTION FOR DIP FINANCING - 27

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

dc-619910

AWBC respectfully requests that the Court conduct a hearing on this Motion and authorize AWBC to incur debt in an amount up to $2 million under the DIP Credit Agreement, which AWBC shall be permitted to use for, *inter alia*, (a) working capital for operating AWBC's business; (b) payment of fees, costs and charges incurred in connection with the DIP Facility; and (c) the payment of certain other obligations in accordance with relief granted by this Court. For the reasons set forth above, AWBC submits that immediate access to this amount under the DIP Facility is necessary to preserve the value of AWBC's estate for the benefit of its creditors and other parties-in-interest.

## REQUEST FOR WAIVER OF STAY

57. AWBC seeks a waiver of any stay of the effectiveness of the DIP Order that may be imposed by Bankruptcy Rule 6004 or any other Bankruptcy Rule. As set forth above, AWBC requires immediate access to the financing to be provided under the DIP Credit Agreement to prevent potentially irreparable damage to AWBC's business, operations, the value of the Shares, and AWBC's ability to consummate the Sale. Accordingly, AWBC submits that ample cause exists to justify a waiver of any stay imposed by Bankruptcy Rule 6004 or any other the Bankruptcy Rule, to the extent applicable.

## NOTICE

58. Notice of this Motion has been provided to (i) any entities known to have asserted any Encumbrance in or upon the Shares or the Other Purchased Assets; (ii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, including the FDIC and Washington DFI; (iii) the Office of the United States Trustee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) Wilmington Trust

MOTION FOR DIP FINANCING - 28

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

1  Company; (vii) U.S. Bank; (viii) Preferred Trust Securities, Ltd. VII;

2  (ix) Preferred Trust Securities, Ltd. X; (x) Preferred Trust Securities, Ltd. XXII;

3  (xi) Preferred Trust Securities, Ltd. XXV; (xii) Bank of New York Mellon;

4  (xiii) all entities that have requested notice in accordance with Bankruptcy Rule

5  2002; (xiv) all other known creditors of AWBC; and (xv) counsel to any official

6  committee established in this Chapter 11 case.  In light of the nature of the

7  relief requested herein, AWBC submits that no other or further notice is

8  required.

9          *[Remainder of page intentionally left blank]*

MOTION FOR DIP FINANCING -  29

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON  98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910

1    **CONCLUSION**

2         WHEREFORE, AWBC respectfully requests this Court enter an order,

3    substantially in the form annexed hereto, granting the relief requested in this

4    Motion and such other and further relief as may be just and proper.

5

6

7    DATED this 28th day of October, 2010     FOSTER PEPPER PLLC

8

9                                              */s/ Dillon E. Jackson*

10                                             Dillon E. Jackson, WSBA #1539

11                                             G. Larry Engel
                                               (*pro hac admission pending*)
12                                             Vincent Novak
                                               (*pro hac admission pending*)
13                                             MORRISON & FOERSTER LLP
                                               425 Market Street
14                                             San Francisco, California 94105-2482
                                               Telephone: (415) 268-7000
15
                                               Kenneth E. Kohler
16                                             (*pro hac admission pending*)
                                               MORRISON & FOERSTER LLP
17                                             555 West Fifth Street, Suite 3500
                                               Los Angeles, CA 90013-1024
18                                             Telephone: (213) 892-5815

19                                             – and –

20                                             Alexandra Steinberg Barrage
21                                             (*pro hac admission pending*)
                                               MORRISON & FOERSTER LLP
22                                             2000 Pennsylvania Avenue, NW
                                               Washington, D.C. 20006
23                                             Telephone: (202) 887-1552

24                                             Proposed Counsel for
                                               AmericanWest Bancorporation
25

26

MOTION FOR DIP FINANCING - 30

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

dc-619910