1   Dillon E. Jackson WSBA #1539
    Foster Pepper PLLC
2   1111 Third Avenue, Suite 3400
3   Seattle, Washington 98101-3299
    Telephone:    (206) 447-4400
4   Facsimile No.: (206) 447-9700

5   G. Larry Engel (*admitted pro hac vice*)
    MORRISON & FOERSTER LLP
6   425 Market Street
7   San Francisco, California 94105-2482
    Telephone:    (415) 268-7000
8   Facsimile No.: (415) 268-7522

9   Proposed Counsel for
    AMERICANWEST BANCORPORATION
10

11
                    UNITED STATES BANKRUPTCY COURT
12
                    EASTERN DISTRICT OF WASHINGTON
13

14
    In re                                    Case No. 10-06097-PCW11
15
    AMERICANWEST                             Chapter 11
16  BANCORPORATION,
                                             **FINAL ORDER AUTHORIZING**
17              Debtor.                      **AWBC TO OBTAIN**
                                             **POSTPETITION FINANCING ON A**
18                                           **SENIOR SECURED,**
                                             **SUPERPRIORITY BASIS AND**
19                                           **AUTHORIZING THE USE OF**
                                             **CASH COLLATERAL**
20

21          On October 28, 2010, AmericanWest Bancorporation ("AWBC"),

22  the debtor and debtor-in-possession in the above-captioned Chapter 11 case (the

23  "Case"), filed a motion (the "Motion") seeking, pursuant to sections 105, 361,

24  362, 363(c)(2), 364(c)(1), 364(c)(2), and 364(c)(3) of Title 11 of the United

25  States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001(c), and

26  9014 of the Federal Rules of Bankruptcy Procedure (as amended, the

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL

sf-2909557

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1  "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States
2  Bankruptcy Court for the Eastern District of Washington (the "Local Rules"),
3  the entry of this final order (the "Final Order"):

4      (I)     authorizing AWBC to obtain postpetition financing pursuant to a
5              debtor-in-possession credit agreement, substantially in the form
6              annexed hereto as Exhibit A (as amended, supplemented, or
7              otherwise modified from time to time, the "DIP Credit
8              Agreement")[1] by and between AWBC, as borrower, and SKBHC
9              Hawks Nest Acquisition Corp. as lender (together with its
10             successors and assigns, the "DIP Lender"), and together with all
11             other related agreements, documents and instruments contemplated
12             thereby (collectively, the "DIP Credit Documents"), authorizing
13             AWBC to borrow up to $2,000,000, plus all other interest, fees and
14             expenses due and payable under the DIP Credit Documents  (the
15             "Obligations"), such financing to be (A) secured by first-priority
16             senior secured liens on all unencumbered tangible and intangible
17             property of AWBC of any kind, as covered by the DIP Credit
18             Documents (other than Avoidance Actions and the proceeds
19             therefrom), subject only to the Carve-Out, pursuant to
20             sections 364(c)(2) of the Bankruptcy Code, and (B) secured by a
21             perfected lien upon all tangible and intangible property of AWBC
22             that is subject to and junior to the Carve-Out and the Permitted

23
24  _____
25      [1]    Capitalized terms not defined herein shall have the meanings
26  ascribed to them in the DIP Credit Agreement.

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 2

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

| | |
|---|---|
| 1 | Liens as defined in the DIP Credit Documents pursuant to |
| 2 | sections 364(c)(3) of the Bankruptcy Code; |
| 3 | (II) granting the DIP Lender superpriority administrative claims in the |
| 4 | Case pursuant to section 364(c)(1) of the Bankruptcy Code, such |
| 5 | claims to be senior in right of payment over any and all |
| 6 | administrative expenses of the kinds specified in |
| 7 | sections 503(b) and 507(a) of the Bankruptcy Code or otherwise, |
| 8 | subject only to the Carve-Out (such credit facility being referred to |
| 9 | herein as the "DIP Facility"); and |
| 10 | (III) authorizing AWBC to use Cash Collateral (as defined below) |
| 11 | pursuant to section 363(c) of the Bankruptcy Code. |
| 12 | This Court having considered the Motion and the exhibits attached |
| 13 | thereto and the *Declaration of Patrick J. Rusnak, Chief Executive Officer of* |
| 14 | *AmericanWest Bancorporation, in Support of Chapter 11 Petition and First* |
| 15 | *Day Pleadings*; a hearing having been held and concluded on November 18, |
| 16 | 2010 before this Court (the "Hearing"); the Court having considered upon the |
| 17 | entire record made at the Hearing, including arguments of counsel; and after |
| 18 | due deliberation and sufficient cause appearing therefor: |
| 19 | IT IS HEREBY FOUND AND CONCLUDED that: |
| 20 | (A) On October 28, 2010 (the "Filing Date"), AWBC filed a |
| 21 | voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy |
| 22 | Code, thereby commencing this Case. AWBC is continuing in possession of its |
| 23 | property, and operating and managing its business as a debtor-in-possession, |
| 24 | pursuant to sections 1107 and 1108 of the Bankruptcy Code. |
| 25 | (B) This Court has jurisdiction over these proceedings and the |
| 26 | parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. |

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 3

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

sf-2909557

1  Consideration of this Motion constitutes a core proceeding as defined in 28
2  U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C.
3  §§ 1408 and 1409.

4          (C)    Telephone, facsimile notice or overnight mail notice of the
5  Hearing and the entry of this Final Order has been provided to: (i) any entities
6  known to have asserted any Encumbrance in or upon the Shares or the Other
7  Purchased Assets; (ii) all federal, state, and local regulatory or taxing authorities
8  or recording offices which have a reasonably known interest in the relief
9  requested by the Motion, including the Federal Deposit Insurance Corporation
10  and the Washington State Department of Financial Institutions; (iii) the Office
11  of the United States Trustee; (iv) the Securities and Exchange Commission; (v)
12  the Internal Revenue Service; (vi) Wilmington Trust Company; (vii) U.S. Bank;
13  (viii) Preferred Trust Securities, Ltd. VII; (ix) Preferred Trust Securities, Ltd.
14  X; (x) Preferred Trust Securities, Ltd. XXII; (xi) Preferred Trust Securities, Ltd.
15  XXV; (xii) Bank of New York Mellon; (xiii) all entities that have requested
16  notice in accordance with Bankruptcy Rule 2002; (xiv) all other known
17  creditors of AWBC; and (xv) counsel to any official committee established in
18  this Chapter 11 case (collectively, the "Notice Parties"). Under the exigent
19  circumstances, the requisite notice of the Motion and the relief requested
20  thereby and this Final Order have been provided in accordance with Bankruptcy
21  Rule 4001, which notice is sufficient for all purposes under the Bankruptcy
22  Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy
23  Code, and no other notice need be provided for entry of this Final Order.

24          (D)    The relief requested by the Motion is necessary to avoid
25  harm to AWBC's estate, and good, adequate, and sufficient cause has been
26

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 4

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

1  shown to justify the granting of the relief requested herein, and the immediate
2  entry of this Final Order.

3          (E)     AWBC does not have sufficient available resources of
4  working capital and financing to carry on operations without the DIP Facility
5  and the use of Cash Collateral (as defined below). AWBC has an immediate
6  need to obtain financing under the DIP Facility and to use Cash Collateral, in
7  order to permit, among other things, AWBC to continue its business operations
8  in an orderly manner, maintain business relationships, and satisfy other working
9  capital and operational needs.

10         (F)     AWBC is unable to obtain unsecured credit allowable under
11  section 503(b)(1) of the Bankruptcy Code as an administrative expense or
12  pursuant to sections 364(a) and 364(b) of the Bankruptcy Code. Financing on a
13  post-petition basis is not available to AWBC unless AWBC grants: (i) the DIP
14  Facility Liens (as defined below) upon the DIP Facility Collateral (defined
15  below), pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, to
16  secure the Obligations, and (ii) the Superpriority Claims (as defined below) in
17  respect of the Obligations, pursuant to section 364(c)(1) of the Bankruptcy
18  Code. The DIP Lender has indicated a willingness to make such loans and
19  advances and provide such other financial accommodations pursuant to the
20  terms and conditions of the DIP Credit Documents. Under the circumstances,
21  AWBC is otherwise unable to obtain financing on more favorable terms from
22  sources other than the DIP Lender under the DIP Credit Documents.

23         (G)     Concurrently while negotiating the DIP Credit Agreement,
24  AWBC has negotiated an asset purchase agreement (the "APA") pursuant to
25  which SKBHC Hawks Nest Acquisition Corp., which is also serving as the DIP
26  Lender (the "Purchaser"), proposes to purchase the issued and outstanding

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 5

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

1   shares of common stock (the "Shares") of AmericanWest Bank, a Washington-
2   chartered bank that operates in Eastern and Central Washington, Northern
3   Idaho, and Utah (the "Bank") from AWBC, together with the Other Purchased
4   Assets (as defined in the APA), through a Court-approved competitive bidding
5   process. Pursuant to the APA, the Purchaser would act as a stalking-horse
6   bidder offering to pay AWBC $6.5 million for the Shares and the Other
7   Purchased Assets and would, simultaneously with the closing of the APA,
8   invest in the Bank for recapitalization purposes an amount necessary to obtain
9   the Purchaser Required Approvals (as defined in the APA) but in no event to
10  exceed Two Hundred Million Dollars ($200,000,000). Further, pursuant to the
11  APA, as reimbursement for acting as the stalking-horse bidder, AWBC would
12  pay the Purchaser $1,000,000 as a Stalking-Horse Bidder Fee (as defined in the
13  APA) should a third party overbid the Purchaser and purchase the Shares and
14  the Other Purchased Assets.

15          (H)    The APA, the DIP Facility, and the use of Cash Collateral
16  have been negotiated in good faith and at arms-length between AWBC and the
17  Purchaser/DIP Lender, as applicable. As such, the terms applicable to the APA,
18  the DIP Facility, and the use of Cash Collateral by AWBC shall be deemed to
19  have been extended, issued, made, or used as the case may be, in good faith as
20  required by, and within the meaning of, section 364(e) of the Bankruptcy Code,
21  and the DIP Lender is entitled to the protections of section 364(e) of the
22  Bankruptcy Code.

23          (I)     The terms of the DIP Facility and this Final Order are fair
24  and reasonable, and reflect AWBC's exercise of prudent business judgment
25  consistent with its fiduciary duties, and are supported by reasonably equivalent
26  value and fair consideration.

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 6

sf-2909557

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

1          (J)    This Court concludes that entry of this Final Order is in the

2    best interests of AWBC's estate and creditors because its implementation,

3    among other things, will allow for AWBC to remain in business by providing

4    the working capital necessary to sustain ongoing working capital requirements,

5    which shall include, without limitation, the expenses incurred during the

6    Company's Case. Absent the entry of this Final Order, AWBC's estate would

7    be immediately and irreparably harmed.

8          (K)    Each of the foregoing findings by this Court will be deemed

9    a finding of fact if and to the full extent that it makes and contains factual

10   findings, and will be deemed a conclusion of law if and to the full extent that it

11   makes and contains legal conclusions.

12         Based upon the foregoing findings and conclusions, and upon the

13   record made by AWBC before this Court at the hearing on the Motion, and

14   good and sufficient cause appearing therefor,

15         IT IS HEREBY ORDERED that:

16         1.    The Motion is granted on a final basis, subject to the terms

17   and conditions set forth in this Final Order.

18         2.    All objections, if any, to the Motion are resolved hereby or,

19   to the extent not resolved, are overruled.

20         3.    AWBC is expressly authorized and empowered to execute

21   and deliver the DIP Credit Documents together with any other document of any

22   kind required to be executed and delivered in connection therewith. AWBC is

23   authorized and obligated to comply with and perform, and is bound by, all of

24   the terms, conditions, and waivers contained therein, and AWBC is authorized,

25   directed, and obligated to repay amounts borrowed, with interest, fees, and

26   expenses, and any other allowed charges and amounts, to the DIP Lender in

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 7

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 7 of 33

1   accordance with and subject to the terms and conditions set forth in the DIP
2   Credit Documents not later than 45 days after the date of the DIP Credit
3   Agreement subject to one extension not to exceed 15 days (the "Maturity
4   Date"). None of the DIP Credit Documents, any provision thereof, any right
5   arising under any provision thereof, or any pre-Filing Date payments made to
6   the DIP Lender (solely in its capacity as a DIP Lender) in connection with the
7   DIP Lender's commitment to enter into the DIP Credit Documents shall be
8   voidable or avoidable under section 548 of the Bankruptcy Code, under any
9   applicable State Uniform Fraudulent Transfer Act, Uniform Fraudulent
10  Conveyance Act or similar statute or common law, or otherwise. AWBC is
11  further authorized, obligated, and directed to pay all fees and expenses incurred
12  by the DIP Lender with respect to the origination of the DIP Credit Documents,
13  including without limitation the reasonable fees and expenses of professionals
14  engaged by the DIP Lender, in an aggregate amount not to exceed $100,000
15  (the "Fee Cap"), in each case in accordance with and subject to the terms of the
16  DIP Credit Documents. The Fee Cap, however, will not apply to fees or
17  expenses incurred by the DIP Lender while defending the DIP Credit
18  Documents in any litigation or any other dispute. None of the fees and expenses
19  of the professionals engaged by the DIP Lender payable pursuant to this
20  paragraph shall be subject to separate approval by this Court (but this Court
21  shall resolve any dispute as to the reasonableness of any such fees and
22  expenses), and no recipient of any such payment shall be required to file any
23  interim or final fee application with respect thereto.
24          4.      AWBC is expressly authorized to borrow from the DIP
25  Lender, on the terms and subject to the conditions and limitations in availability
26

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 8

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 8 of 33

1  set forth in the DIP Credit Documents and this Final Order, up to $2,000,000 in
2  the aggregate.

3          5.      AWBC is authorized to use the proceeds of the DIP Facility
4  for ongoing working capital needs and to pay operating costs and expenses of
5  AWBC during the pendency of the Case in accordance with the terms of the
6  DIP Credit Agreement, including the payment of the fees, costs and expenses of
7  AWBC's advisors, advisors to any official committee of creditors appointed in
8  the Case (each, a "Committee"), or counsel for Wilmington Trust Company and
9  U.S. Bank National Association (as counsel for the indenture trustees in the
10  Case). Without the prior written consent of the DIP Lender, no portion of the
11  DIP Facility, the DIP Facility Collateral (as defined below), or the Cash
12  Collateral shall be used (a) to investigate the DIP Lender, (b) to object to or
13  contest in any manner, or raise any defense to (i) the Superpriority Claims (as
14  defined below) or (ii) the DIP Facility Liens (as defined below) granted to the
15  DIP Lender pursuant to this Final Order, (c) to request authorization to obtain a
16  postpetition loan or other financial accommodation pursuant to
17  sections 364(c) or (d) of the Bankruptcy Code on a non-consensual basis, or
18  (d) to prevent, hinder, or otherwise delay the exercise or enforcement of, or
19  seek to modify, any rights and remedies of the DIP Lender, as applicable,
20  arising under the DIP Credit Documents or this Final Order (collectively, the
21  "Prohibited Actions").

22          6.      Pursuant to section 364(c)(1) of the Bankruptcy Code, all of
23  the Obligations shall constitute allowed claims (the "Superpriority Claims")
24  against AWBC with priority over any and all administrative expenses, third-
25  party claims under section 507(b) of the Bankruptcy Code for diminution in
26  collateral value, and all other claims against AWBC, now existing or hereafter

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 9

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

arising, of any kind whatsoever, including, without limitation, all administrative
expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy
Code, which allowed claims shall be payable from and have recourse to all pre
and postpetition property of AWBC and all proceeds thereof (excluding
Avoidance Actions (defined below) and the proceeds and recoveries therefrom),
subject only to the payment of the Carve-Out (defined below) to the extent
specifically provided for herein.

       7.     As security for the Obligations, the DIP Lender shall have
and is hereby granted (effective upon the date of this Final Order and without
the necessity of the execution by AWBC of mortgages, security agreements,
pledge agreements, financing statements or otherwise), valid and perfected
security interests in, and liens (the "Liens"), on all unencumbered tangible and
intangible assets of AWBC, including without limitation all issued and
outstanding Shares of the Bank now owned or hereafter acquired by AWBC as
covered by the DIP Credit Documents (the "Assets") as well as all proceeds,
products, rents and profits thereof, including all cash from the payment of
dividends or interest on the Shares, together with all other property described in
Bankruptcy Code section 363(a) and applicable case law constituting "cash
collateral" (the "Cash Collateral" and together with the Assets, the "DIP
Facility Collateral"). The DIP Facility Collateral includes without limitation,
all cash or checks on hand, all cash or securities deposited into any account
maintained by AWBC, and the proceeds of all causes of action (excluding
claims and causes of action arising under sections 502(d), 544, 545, 547, 548,
549, 550 or 551 of the Bankruptcy Code ("Avoidance Actions") and the
proceeds and recoveries therefrom) with the following priorities:

      (a)     pursuant to section 364(c)(2) of the Bankruptcy Code, a
first-priority, perfected Lien upon all of AWBC's right, title and

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 10

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

interest in, to, and under the DIP Facility Collateral that is not otherwise encumbered by Permitted Liens (as defined in the DIP Credit Agreement); and

(b)     pursuant to section 364(c)(3) of the Bankruptcy Code, the best available junior, perfected Lien upon all of AWBC's right, title, and interest in, to and under all DIP Facility Collateral which is subject to the Permitted Liens.

The foregoing Liens are referred to herein as the "DIP Facility Liens."   Except to the extent expressly set forth in this Final Order, the Liens granted pursuant to this Final Order and the DIP Credit Documents to the DIP Lender to secure the Obligations shall not be subordinated to or made pari passu with any other lien or security interest.

8.     Upon the occurrence and during the continuation of an Event of Default (defined below) with respect to which DIP Lender provides written notice to counsel to AWBC and its counsel, the U.S. Trustee, and counsel to the Committee that the Carve-Out is invoked (a "Carve-Out Trigger Notice"), the Superpriority Claims, the DIP Facility Liens, and any claims or liens ranking junior in priority to the Superpriority Claims and the DIP Facility Liens shall be subject to payment of the Carve-Out.  As used herein, "Carve-Out" means the (a) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (b) unpaid and allowed fees and expenses of professional persons, retained by AWBC or any Committee, or counsel for Wilmington Trust Company and U.S. Bank National Association (as counsel for the indenture trustees in the Case) (collectively, the "Professionals"), in each case, incurred on and prior to delivery of a Carve-Out Trigger Notice and (c) unpaid and allowed fees and expenses of Professionals incurred subsequent to delivery of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $250,000 (the "Professional Expense Cap") provided,

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 11

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

however, that, upon an Event of Default, prior to receiving payment of any fees
and expenses out of the Carve-Out, any professional who received a retainer
from AWBC shall first apply any unused portion of such retainer to any
outstanding fees and expenses. So long as no Event of Default shall have
occurred and be continuing and no Carve-Out Trigger Notice shall have been
delivered, AWBC will be permitted to pay compensation and reimbursement of
fees and expenses allowed and payable under 11 U.S.C. sections 105(a), 330
and 331, as the same may be due and payable, subject to the rights of any party
in interest to object to any fees, expenses, reimbursement or compensation of
any Professionals. For the avoidance of doubt, the Professional Expense Cap
shall only apply after the delivery of a Carve-Out Trigger Notice. The
Professional Expense Cap shall be reduced, dollar for dollar, by the amount of
any fees, costs and expenses paid to Professionals and incurred subsequent to
delivery of a Carve-Out Trigger Notice. Payment of any obligations relating to
the Carve-Out shall not, and shall not be deemed to, (i) reduce AWBC's
obligations to the DIP Lender or (ii) subordinate, modify, alter or otherwise
affect any of the liens and security interests of the DIP Lender (or the DIP
Lender's respective claims against AWBC).

9.      Upon entry of, and to the extent provided in, this Final
Order, neither AWBC nor its estate may assert a claim under section 506(c) of
the Bankruptcy Code for any costs and expenses incurred in connection with
the preservation, protection, or enhancement of, or realization by the DIP
Lender upon the DIP Facility Collateral. The DIP Lender will not be subject to
the equitable doctrine of "marshaling" or any other similar doctrine with respect
to any DIP Facility Collateral.

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 12

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 12 of 33

1         10.    All DIP Facility Liens binding and perfected automatically
2 upon the entry of this Final Order. The DIP Lender will not be required to file
3 or serve financing statements, mortgages, notices of lien, or similar instruments
4 which otherwise may be required under federal or state law in any jurisdiction,
5 or take any action, including taking possession, to validate and perfect the DIP
6 Facility Liens, as applicable  *See p. 21 Plus*  If, however, the DIP Lender in its reasonable
7 discretion shall determine to file any such financing statements, mortgages,
8 agreements, notices of lien, or similar instruments, or to otherwise confirm
9 perfection of such DIP Facility Liens, AWBC at AWBC's expense is hereby
10 authorized, directed, and obligated to cooperate with and assist in such process
11 to the extent provided in the DIP Credit Documents or this Final Order, and all
12 such documents shall be deemed to have been perfected at the time of and on
13 the date of this Final Order, with the priorities set forth herein, and shall be and
14 hereby are deemed and adjudicated senior to any other post-petition filing by
15 any other person or entity with respect to the same collateral. A certified copy
16 of this Final Order may, in the discretion of the DIP Lender, be filed with or
17 recorded in filing or recording offices in addition to or in lieu of such financing
18 statements, mortgages, notices of lien, or similar instruments, and all filing
19 offices are hereby authorized to accept such certified copy of this Final Order
20 for filing and recording.

21         11.    Prior to any Event of Default, AWBC is hereby authorized
22 to use the Cash Collateral of the DIP Lender solely on the terms and conditions
23 contained in this Final Order except as otherwise provided in the DIP Credit
24 Documents.

25         12.    Events of default under this Final Order (the "Events of
26 Default") will include the following:

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 13

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

      (a)    The entry of an order, which is not stayed, converting

2                  AWBC's Chapter 11 Case to a case under chapter 7 of the

3                  Bankruptcy Code, or AWBC files a motion or does not

4                  oppose a motion seeking such relief, unless consented to by

5                  the DIP Lender;

6         (b)    The entry of an order dismissing the Case, or AWBC files a

7                  motion or does not oppose a motion seeking such relief,

8                  unless consented to by the DIP Lender;

9         (c)    The entry of an order granting appointment of (i) a trustee

10                 under section 1104 of the Bankruptcy Code or (ii) an

11                 examiner with enlarged powers related to the operation of

12                 the business under section 1106(b) of the Bankruptcy Code

13                 (powers beyond those set forth in section 1106(a)(3) and (4)

14                 of the Bankruptcy Code) or AWBC files a motion or does

15                 not oppose a motion seeking such relief, unless consented to

16                 by the DIP Lender;

17        (d)    The filing a motion by AWBC (i) to further use Cash

18                 Collateral of the DIP Lender under section 363(c) of the

19                 Bankruptcy Code without the express prior written consent

20                 of the DIP Lender (it being understood and agreed that the

21                 DIP Lender consents to the proposed use of Cash Collateral

22                 on the terms and conditions set forth in this Final Order),

23                 (ii) to recover from any portions of the DIP Facility

24                 Collateral any costs or expenses of preserving or disposing

25                 of such collateral under section 506(c) of the Bankruptcy

26                 Code, (iii) to cut off rights in the DIP Facility Collateral

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 14

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

1              under section 552(b) of the Bankruptcy Code, or (iv) to take

2              any other action or actions materially adverse to the DIP

3              Lender or its rights and remedies under the DIP Credit

4              Documents or the DIP Lender's interest (as lender under the

5              DIP Credit Agreement) in any of the DIP Facility Collateral;

6      (e)    Except for the Carve-Out, the Permitted Liens, or as

7              permitted in this Final Order, the entry of any order of the

8              Bankruptcy Court granting a super-priority claim or lien pari

9              passu with or senior to that granted to the DIP Lender

10             hereunder;

11     (f)    The entry of any order in the Case or any successor case,

12             (i) which order constitutes the stay, modification (without

13             the consent of the DIP Lender), appeal or reversal of this

14             Final Order, or (ii) which order otherwise materially

15             adversely affects the effectiveness of this Final Order;

16     (g)    The entry of any unstayed order in the Case granting relief

17             from the automatic stay applicable under section 362 of the

18             Bankruptcy Code so as to allow a third party or third parties

19             to proceed against any property of AWBC which has a

20             value, or to commence or continue any litigation against

21             AWBC, involving potential liability not covered by

22             insurance in excess of $500,000 in the aggregate;

23     (h)    The payment of principal or interest or otherwise in a

24             manner inconsistent with the DIP Credit Agreement; and

25     (i)    The occurrence of any other Event of Default as defined

26             under the DIP Credit Agreement.

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 15

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 15 of 33

1          13.    Upon the occurrence of and during the continuance of an

2  Event of Default, the DIP Lender is entitled to exercise rights and remedies and

3  take all or any of the following actions without further relief from the automatic

4  stay pursuant to section 362(a) of the Bankruptcy Code or any other applicable

5  stay or injunction (which have been modified and vacated, as heretofore

6  ordered, to the extent necessary to permit such exercise of rights and remedies

7  and the taking of such actions) or further order of or application to this Court:

8  (a) terminate its obligation to make advances under the DIP Credit Agreement;

9  (b) charge a default rate of interest as set forth in the DIP Credit Agreement;

10  (c) terminate AWBC's right to use Cash Collateral and require AWBC to

11  segregate and preserve all Cash Collateral for the benefit of the DIP Lender;

12  (d) declare the principal of and accrued interest, fees, and other liabilities

13  constituting the Obligations to be immediately due and payable; and/or (e) take

14  any other action or exercise any other right or remedy permitted to the DIP

15  Lender under the DIP Credit Documents, this Final Order, or by operation of

16  law; provided, however, that the DIP Lender may not exercise its rights under

17  clauses (d) or (e) without first providing to counsel for AWBC, counsel for any

18  Committee appointed in the Case, and the U.S. Trustee five business days'

19  written notice (an "Enforcement Notice") of any such Event of Default and the

20  proposed exercise of rights and remedies. AWBC waives any right to seek

21  relief under the Bankruptcy Code, including, without limitation, under section

22  105 of the Bankruptcy Code, to the extent any such relief would in any way

23  restrict or impair the rights and remedies of the DIP Lender set forth in this

24  Final Order and in the DIP Credit Documents, provided that AWBC will retain

25  the right to challenge the occurrence of an Event of Default as discussed below.

26  If AWBC, or any other person challenges the occurrence of an Event of

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 16

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

sf-2909557

1 Default, any such person may request an expedited hearing before this Court
2 (subject to the Court's availability) and the DIP Lender shall be permitted
3 immediately to take any action described in clauses (a), (b), (c), and (d) as
4 described above, but unless the Court orders otherwise, the DIP Lender shall
5 not take the actions described in clause (e) above pending any such hearing.

6        14.    Except as set forth in paragraph 13 hereof and in the DIP
7 Credit Documents, AWBC waives demand, protest, notice of protest, notice of
8 default or dishonor, notice of payment and nonpayment, nonpayment at
9 maturity, release, compromise, settlement, extension, or renewal of documents,
10 instruments, chattel paper, and guaranties at any time held by the DIP Lender
11 with respect to the DIP Facility on which AWBC may in any way be liable. So
12 long as the DIP Lender complies with its obligations, if any, under applicable
13 law (including the Bankruptcy Code), and AWBC remains in control of the DIP
14 Facility Collateral, (i) the DIP Lender shall not, in any way or manner, be liable
15 or responsible for (A) the safekeeping of the DIP Facility Collateral, (B) any
16 loss or damage thereto occurring or arising in any manner or fashion from any
17 cause, (C) any diminution in the value thereof, or (D) any act or default of any
18 carrier, servicer, bailee, custodian, forwarding agency, or other person, and
19 (ii) all risk of loss, damage or destruction of the DIP Facility Collateral shall be
20 borne by AWBC.

21        15.    AWBC is authorized to perform all acts, and execute and
22 comply with the terms of such other documents, instruments, and agreements in
23 addition to the DIP Credit Documents as the DIP Lender may reasonably
24 require as evidence of and for the protection of the Obligations, or which
25 otherwise may be reasonably deemed necessary by the DIP Lender to effectuate
26 the terms and conditions of the DIP Credit Documents or this Final Order.

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 17

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

sf-2909557

1  AWBC and the DIP Lender are hereby authorized to implement, in accordance
2  with the terms of the DIP Credit Agreement, any amendments, waivers, or
3  modifications to the DIP Credit Documents that are not materially adverse to
4  AWBC without further order of this Court.

5         16.    Without limiting the rights of access and information
6  afforded to the DIP Lender under the DIP Credit Documents (but subject to the
7  limitations set forth in the DIP Credit Documents), AWBC will be required to
8  afford representatives, agents, and/or employees of the DIP Lender reasonable
9  access to AWBC's premises and its records in accordance with the DIP Credit
10 Documents, and shall cooperate, consult with, and provide to such persons all
11 such information.

12        17.    Having been found to be extending credit to, and permitting
13 the use of Cash Collateral by, AWBC in good faith, based on the record before
14 this Court, the DIP Lender will be entitled to the full protection of
15 section 364(e) of the Bankruptcy Code with respect to the Obligations and the
16 DIP Facility Liens created, adjudicated, or authorized by this Final Order in the
17 event that this Final Order or any finding, adjudication, or authorization
18 contained herein is stayed, vacated, reversed, or modified on appeal. Any stay,
19 modification, reversal, or vacation of this Final Order will not affect the validity
20 of any Obligations of AWBC to the DIP Lender incurred by AWBC pursuant
21 hereto prior to the DIP Lender's actual receipt of written notice of the effective
22 date of any such stay, modification, reversal, or vacation. Notwithstanding any
23 such stay, modification, reversal, or vacation, all financing extended to, and
24 Cash Collateral used by, AWBC pursuant to this Final Order and all
25 Obligations incurred by AWBC pursuant hereto prior to the DIP Lender's
26 actual receipt of written notice of the effective date of any such stay,

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 18

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

1 modification, reversal, or vacation shall be governed in all respects by the
2 original provisions hereof, and the DIP Lender shall be entitled to all the rights,
3 privileges, and benefits, including, without limitation, the liens, security
4 interests, and first priorities granted herein with respect to all such Obligations.

5       18.     The provisions of this Final Order and any actions taken
6 pursuant hereto shall survive entry of any order (a) confirming any plan of
7 reorganization in the Case, (b) converting the Case to a chapter 7 case, or
8 (c) dismissing the Case, and to the greatest extent permitted by applicable law,
9 the terms and provisions of this Final Order, as well as the Superpriority Claims
10 and the DIP Facility Liens granted pursuant to this Final Order, the DIP Credit
11 Documents, and related documents (as applicable) shall continue in full force
12 and effect notwithstanding the entry of any such order, and such Superpriority
13 Claims and DIP Facility Liens will maintain their priority as provided by this
14 Final Order until all of the non-contingent Obligations are indefeasibly paid in
15 full in cash or credit bid and all contingent Obligations are cash collateralized as
16 provided for under the DIP Credit Agreement.

17       19.     The DIP Lender is hereby relieved of the requirement to file
18 proofs of claim in the Cases with respect to any Obligations.

19       20.     Nothing in this Final Order, the DIP Credit Documents or
20 any other documents related to these transactions shall in any way be construed
21 or interpreted to impose or allow the imposition upon the DIP Lender of any
22 liability for any claims arising from the prepetition or postpetition activities of
23 AWBC in the operation of their businesses, or in connection with their
24 restructuring efforts. The DIP Lender will not be deemed to be in control of the
25 operations of AWBC or to be acting as a "responsible person" or "owner or
26 operator" with respect to the operation or management of AWBC (as such

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 19

sf-2909557

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 19 of 33

terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).

21. The stipulations and admissions contained in this Final Order shall be binding upon AWBC, its estate, and all parties in interest in all circumstances. As such, pursuant to this Final Order, (i) the DIP Lender's Obligations will not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Case and any subsequent chapter 7 case, (ii) the DIP Facility Liens on the DIP Facility Collateral shall be deemed to be legal, valid, binding, perfected, and of the priority described in this Final Order, not subject to recharacterization, subordination, avoidance, or reduction, and (iii) the Obligations and the DIP Facility Liens on the DIP Facility Collateral shall not be subject to any challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of any of AWBC's estate, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for AWBC). If any proceeding is filed, the stipulations and admissions contained this Final Order shall nonetheless remain binding and preclusive on any Committee and on any other person or entity. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to AWBC or its estate.

22. Without prejudice to the rights of any other party, AWBC waives any and all claims and causes of action against the DIP Lender, and its respective agents, affiliates, subsidiaries, directors, officers, employees,

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 20

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

1  representatives, attorneys, professionals and advisors, directly related to the DIP

2  Facility, this Final Order, or the negotiation of the terms thereof.

3      23.    The stay of this Final Order set forth in Bankruptcy Rule

4  6004 is hereby waived and this Final Order shall be effective immediately upon

5  its entry.

6      24.    To the fullest extent permitted by law, the provisions of this

7  Final Order and the DIP Credit Documents shall be binding upon and inure to

8  the benefit of the parties thereto, and their respective successors and assigns,

9  including any trustee or other fiduciary hereafter appointed in the Case or in any

10  subsequent chapter 7 case as a legal representative of AWBC or its estate.

11      25.    To the extent any provision of this Final Order conflicts with

12  any provision of the Motion or any provision of the DIP Credit Documents, the

13  provisions of this Final Order shall control.

14      26.    This Court shall retain jurisdiction to enforce this Final

15  Order, and over any matters or disputes arising from or relating to the

16  implementation of this Final Order.

17

18  Dated: _Nov 18th_ , 2010
    Spokane, Washington

19                              _Patricia C Williams_

20                              UNITED STATES
                                BANKRUPTCY JUDGE

21

22

23  * _Para. 10 cont'd._

24  DIP Lender shall file a notice of the lien imposed by

25  this Order in the appropriate public recording office

26  of the county in which real property owned by AWBC
    is located.

FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN DIP FINANCING ON A
SENIOR SECURED SUPERPRIORITY BASIS AND AUTHORIZING USE OF CASH
COLLATERAL - 21

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

sf-2909557

# EXHIBIT A

SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT

among

AMERICANWEST BANCORPORATION,

as Borrower,

and

SKBHC HAWKS NEST ACQUISITION CORP.,

as Lender

Dated as of October 28, 2010

# TABLE OF CONTENTS

Page

SECTION 1. DEFINITIONS ............................................................................................... 2

    1.1    Defined Terms ................................................................................................... 2
    1.2    Other Definitional Provisions .......................................................................... 9

SECTION 2. AMOUNT AND TERMS OF COMMITMENT .................................................. 10

    2.1    Commitment ..................................................................................................... 10
    2.2    Procedure for Borrowing ................................................................................. 10
    2.3    Repayment of the Loan .................................................................................... 10
    2.4    Optional Prepayments ...................................................................................... 10
    2.5    Interest Rates and Payment Dates .................................................................... 10
    2.6    Pro Rata Treatment and Payments ................................................................... 11
    2.7    Taxes ................................................................................................................ 11
    2.8    Notes ................................................................................................................ 12
    2.9    Priority and Liens ............................................................................................ 12
    2.10   Security ............................................................................................................ 13

SECTION 3. REPRESENTATIONS AND WARRANTIES ..................................................... 13

    3.1    Existence; Compliance with Law ..................................................................... 13
    3.2    Power; Authorization; Enforceable Obligations ............................................. 14
    3.3    No Legal Bar .................................................................................................... 14
    3.4    No Default ........................................................................................................ 14
    3.5    Federal Regulations ......................................................................................... 14
    3.6    Investment Company Act; Other Regulations ................................................. 14
    3.7    Accuracy of Information, etc ........................................................................... 15
    3.8    Financial Statements; No Material Adverse Effect .......................................... 15
    3.9    Ownership Of Property; Liens; Investments .................................................... 15
    3.10   Secured Superpriority Obligations ................................................................... 16

SECTION 4. CONDITIONS PRECEDENT ......................................................................... 16

    4.1    Conditions to Loan ........................................................................................... 16

SECTION 5. AFFIRMATIVE COVENANTS ....................................................................... 18

    5.1    Further Assurances ........................................................................................... 18
    5.2    Use Of Proceeds ............................................................................................... 18
    5.3    Preservation Of Existence; Business, Etc ........................................................ 19
    5.4    Budgets; Financial Information; Default Notices ............................................ 19

SECTION 6. NEGATIVE COVENANTS .............................................................................. 19

    6.1    Liens ................................................................................................................. 19
    6.2    Indebtedness ..................................................................................................... 20
    6.3    Investments ...................................................................................................... 20

619322.12-Los Angeles Server 2A - MSW

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 24 of 33

| | | |
|---|---|---|
| 6.4 | Fundamental Changes | 20 |
| 6.5 | Dispositions | 20 |
| 6.6 | Change In Nature Of Business | 21 |
| 6.7 | Transactions With Affiliates | 21 |
| 6.8 | Accounting Changes | 21 |
| 6.9 | Partnerships, Etc | 21 |
| 6.10 | Speculative Transactions | 21 |
| 6.11 | Formation Of Subsidiaries | 21 |

SECTION 7. EVENTS OF DEFAULT ................................................................. 21

| | | |
|---|---|---|
| 7.1 | Events of Default | 21 |
| 7.2 | Application of Proceeds | 24 |

SECTION 8. MISCELLANEOUS .................................................................... 24

| | | |
|---|---|---|
| 8.1 | Amendments and Waivers | 24 |
| 8.2 | Notices | 25 |
| 8.3 | No Waiver; Cumulative Remedies | 25 |
| 8.4 | Survival of Representations and Warranties | 25 |
| 8.5 | Payment of Expenses and Taxes | 25 |
| 8.6 | Payments Set Aside | 26 |
| 8.7 | Successors and Assigns; Assignments | 26 |
| 8.8 | Set-off | 27 |
| 8.9 | Counterparts | 27 |
| 8.10 | Severability | 27 |
| 8.11 | Integration | 27 |
| 8.12 | **GOVERNING LAW** | 27 |
| 8.13 | Submission To Jurisdiction; Waivers | 27 |
| 8.14 | Acknowledgements | 28 |
| 8.15 | Releases of Liens | 28 |
| 8.16 | **WAIVERS OF JURY TRIAL** | 28 |
| 8.17 | Regulatory | 29 |

SCHEDULES:
6.2     Existing Debt

EXHIBITS:

A     Form of Loan Notice
B     Form of Security Agreement
C     Form of Note
D     Order
E     Initial Budget

10-06097-PCW11     Doc 132     Filed 11/18/10     Entered 11/18/10 15:51:25     Pg 25 of 33

SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT (this "Agreement"), dated as of October 28, 2010, among AmericanWest Bancorporation, a Washington corporation and a debtor and debtor in possession in a case pending under Chapter 11 of the Bankruptcy Code (the "Borrower"), and SKBHC Hawks Nest Acquisition Corp., as lender (together with its successors and assigns, the "Lender").

## PRELIMINARY STATEMENTS

1.      On October 28, 2010 (the "Filing Date"), Borrower filed voluntary petitions with the Bankruptcy Court initiating the Case and have continued in the possession of its assets and in the management of its business pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      Borrower has requested that the Lender provide a term loan facility to Borrower in an aggregate principal amount not to exceed the Commitment (as defined herein).

3.      The proceeds of the Loan will be used (i) to pay post-Filing Date related fees and expenses associated with negotiation, execution and delivery of this Agreement and the other Loan Documents, (ii) for working capital and other general corporate purposes of the Borrower not materially inconsistent with the aggregate disbursement contemplated in the Budget and to its extent not prohibited hereunder, (iii) to pay fees and expenses of the Borrower's advisors and the advisors to any Creditors' Committee, in each case associated with the Case and (iv) to make any other payments permitted to be made in the Order or in the First Day Orders or by the Bankruptcy Court to the extent not prohibited by this Agreement or otherwise consented by the Lender.

4.      To provide security for the repayment of all obligations of the Borrower hereunder and under the other Loan Documents, the Borrower will provide to the Lender the following (all as more fully described herein):

a.      pursuant to Section 364 (c)(1) of the Bankruptcy Code and the Order, as applicable, a Superpriority Claim in the Case having priority over any claims of any entity, including, without limitation, any claims specified in or ordered pursuant to Sections 105, 326, 330, 331, 503(b), 506(c), 507, 726, 1113, 1114 or any other provisions of the Bankruptcy Code, subject only to the Carve-Out (as defined herein),

b.      pursuant to Section 364(c)(2) of the Bankruptcy Code and the Order, as applicable, a perfected first priority Lien on all unencumbered property and assets of the Borrower of any kind (other than Avoidance Actions and the proceeds therefrom), subject only to the Carve-Out,

c.      pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected Lien on the property of the Borrower as more fully described herein subject to (i) Liens for taxes not yet due and payable, (ii) mechanic's, materialmen's, warehousemen's or similar Liens that arise by operation of law, (iii) post-petition Capital Lease Obligations or purchase money financings permitted to be entered into hereunder (the Liens described in clauses (i) through this clause (iii), being "Permitted Liens"), and (iv) the Carve-Out.

The parties hereto hereby agree as follows:

1

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 26 of 33

## SECTION 1. DEFINITIONS

1.1 <u>Defined Terms</u>. As used in this Agreement (including the recitals hereof), the terms listed in this <u>Section 1.1</u> shall have the respective meanings set forth in this <u>Section 1.1</u>.

"<u>Affiliate</u>": as to any Person, any other Person that, directly or indirectly, is in control of, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" of a Person means the power, directly or indirectly, either to (a) vote 10% or more of the securities having ordinary voting power for the election of directors (or persons performing similar functions) of such Person or (b) direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

"<u>Agreement</u>": as defined in the preamble hereto.

"<u>Applicable Rate</u>": 9.00% per annum; provided that if the Scheduled Maturity is extended to December 27, 2010, 10.0% per annum for the period from December 12, 2010 through December 27, 2010.

"<u>Assignee</u>": as defined in <u>Section 8.7</u>.

"<u>Audited Financial Statements</u>": the audited consolidated balance sheet of the Borrower and its Subsidiaries for the fiscal year ended December 31, 2009, and the related consolidated statements of income or operations, shareholders' equity and cash flows for such fiscal year of the Borrower and its Subsidiaries, including the notes thereto.

"<u>Avoidance Actions</u>": claims and causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code.

"<u>Bank</u>": AmericanWest Bank, a Washington state chartered bank that operates in Eastern and Central Washington and Northern Idaho under its legal name, and in Utah under the name "Far West Bank".

"<u>Bankruptcy Code</u>": Title 11 of the United States Code entitled "Bankruptcy", as now and hereafter in effect, or any successor statute.

"<u>Bankruptcy Court</u>": the United States Bankruptcy Court for the Eastern District of Washington.

"<u>Board</u>": the Board of Governors of the Federal Reserve System of the United States (or any successor).

"<u>Borrower</u>": as defined in the preamble hereto.

"<u>Budget</u>": initially, the consolidated cash flow projections for the Borrower for the 13-week period ending January 27, 2011 attached hereto as <u>Exhibit E</u>, as such projections are updated from time to time pursuant to <u>Section 5.4(a)</u>.

"<u>Business</u>": the business currently carried on by the Bank and its Subsidiary.

"<u>Business Day</u>": a day other than a Saturday, Sunday or other day on which commercial banks in New York City are authorized or required by law to close.

2

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 27 of 33

"Capital Lease Obligations": as to any Person, the obligations of such Person to pay rent or other amounts under any lease of (or other arrangement conveying the right to use) real or personal property, or a combination thereof, which obligations are required to be classified and accounted for as capital leases on a balance sheet of such Person under GAAP and, for the purposes of this Agreement, the amount of such obligations at any time shall be the capitalized amount thereof at such time determined in accordance with GAAP.

"Capital Stock": any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing.

"Carve-Out": as defined in Section 2.9.

"Carve-Out Trigger Notice": as defined in Section 2.9.

"Case": the case of Borrower currently pending under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"Cash Collateral": "cash collateral" as such term is defined in Section 363(a) of the Bankruptcy Code, or any successor provision.

"Closing Date": as defined in Section 2.1.

"Code": the Internal Revenue Code of 1986, as amended from time to time.

"Collateral": all of the "Collateral" referred to in the Order or the other Security Documents and all of the other property and assets that are or are intended under the terms of the Order or the other Security Documents to be subject to Liens in favor of the Lender.

"Commitment": the obligation of the Lender to make Loan to the Borrower in an aggregate principal amount up to $2,000,000.

"Commitment Period": the period from and including the day after the date of this Agreement to November 15, 2010.

"Commonly Controlled Entity": an entity, whether or not incorporated, that is under common control with the Borrower within the meaning of Section 4001 of ERISA or is part of a group that includes the Borrower and that is treated as a single employer under Section 414 of the Code.

"Contractual Obligation": as to any Person, any provision of any security issued by such Person or of any agreement, instrument or other undertaking to which such Person is a party or by which it or any of its property is bound.

"Creditors' Committee": any official committee appointed in the Case.

"Debtor Relief Laws": the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief laws of the United States or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally.

619322.12-Los Angeles Server 2A - MSW

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 28 of 33

"Default": any of the events specified in <u>Section 7</u>, whether or not any requirement for the giving of notice, the lapse of time, or both, has been satisfied.

"Disposition" or "Dispose": (a) the sale, transfer, license, lease or other disposition (including any sale and leaseback transaction) of any property by the Borrower (or the granting of any option or other right to do any of the foregoing), including any sale, assignment, transfer or other disposal, with or without recourse, of any Capital Stock owned by the Borrower, or any notes or accounts receivable or any rights and claims associated therewith and (b) the issuance of Capital Stock by any Subsidiary of the Borrower to any Person other than the Borrower.

"Dollars" and "$": dollars in lawful currency of the United States.

"Environmental Laws": any and all foreign, Federal, state, local or municipal laws, rules, orders, regulations, statutes, ordinances, codes, decrees, requirements of any Governmental Authority or other Requirements of Law (including common law) regulating, relating to or imposing liability or standards of conduct concerning protection of human health or the environment, as now or may at any time hereafter be in effect.

"ERISA": the Employee Retirement Income Security Act of 1974, as amended from time to time.

"Event of Default": any of the events specified in <u>Section 7</u>, <u>provided</u> that any requirement for the giving of notice, the lapse of time, or both, has been satisfied.

"Facility": the Commitment and the Loans made thereunder.

"Filing Date" as defined in the recitals hereto.

"First Day Orders": as defined in <u>Section 4.1(e)</u>.

"GAAP": generally accepted accounting principles in the United States as in effect from time to time.

"Governmental Approval": any consent, authorization, approval, order, license, franchise, permit, certificate, accreditation, registration, filing or notice, of, issued by, from or to, or other act by or in respect of, any Governmental Authority.

"Governmental Authority": any nation or government, any state or other political subdivision thereof, any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative functions of or pertaining to government, any securities exchange and any self-regulatory organization (including the National Association of Insurance Commissioners).

"Guarantee Obligation": as to any Person (the "guaranteeing person"), any obligation, including a reimbursement, counterindemnity or similar obligation, of the guaranteeing person that guarantees or in effect guarantees, any Indebtedness, leases, dividends or other obligations (the "primary obligations") of any other third Person (the "primary obligor") in any manner, whether directly or indirectly, including any obligation of the guaranteeing person, whether or not contingent, (i) to purchase any such primary obligation or any property constituting direct or indirect security therefor, (ii) to advance or supply funds (1) for the purchase or payment of any such primary obligation or (2) to maintain working capital or equity capital of the primary obligor or otherwise to maintain the net worth or solvency

4

of the primary obligor, (iii) to purchase property, securities or services primarily for the purpose of assuring the owner of any such primary obligation of the ability of the primary obligor to make payment of such primary obligation or (iv) otherwise to assure or hold harmless the owner of any such primary obligation against loss in respect thereof; provided, however, that the term Guarantee Obligation shall not include endorsements of instruments for deposit or collection in the ordinary course of business. The amount of any Guarantee Obligation of any guaranteeing person shall be deemed to be the lower of (a) an amount equal to the stated or determinable amount of the primary obligation in respect of which such Guarantee Obligation is made and (b) the maximum amount for which such guaranteeing person may be liable pursuant to the terms of the instrument embodying such Guarantee Obligation, unless such primary obligation and the maximum amount for which such guaranteeing person may be liable are not stated or determinable, in which case the amount of such Guarantee Obligation shall be such guaranteeing person's maximum reasonably anticipated liability in respect thereof as determined by the Borrower in good faith.

"Indebtedness": of any Person at any date, without duplication, (a) all indebtedness of such Person for borrowed money, (b) all obligations of such Person for the deferred purchase price of property or services (other than current trade payables incurred in the ordinary course of such Person's business), (c) all obligations of such Person evidenced by notes, bonds, debentures or other similar instruments, (d) all indebtedness created or arising under any conditional sale or other title retention agreement with respect to property acquired by such Person (even though the rights and remedies of the seller or lender under such agreement in the event of default are limited to repossession or sale of such property), (e) all Capital Lease Obligations of such Person, (f) all obligations of such Person, contingent or otherwise, as an account party or applicant under or in respect of acceptances, letters of credit, surety bonds or similar arrangements, (g) the liquidation value of all redeemable preferred Capital Stock of such Person, (h) all Guarantee Obligations of such Person in respect of obligations of the kind referred to in clauses (a) through (g) above, and (i) all obligations of the kind referred to in clauses (a) through (h) above secured by (or for which the holder of such obligation has an existing right, contingent or otherwise, to be secured by) any Lien on property (including accounts and contract rights) owned by such Person, whether or not such Person has assumed or become liable for the payment of such obligation. The Indebtedness of any Person shall include the Indebtedness of any other entity (including any partnership in which such Person is a general partner) to the extent such Person is liable therefor as a result of such Person's ownership interest in or other relationship with such entity, except to the extent the terms of such Indebtedness expressly provide that such Person is not liable therefor.

"Interest Payment Date": (a) the last Business Day of each calendar month while any Loan is outstanding and the Maturity Date, and (b) the date of any repayment or prepayment of any Loan.

"Investment" means, as to any Person, any direct or indirect acquisition or investment by such Person, whether by means of (a) the purchase or other acquisition of Capital Stock or debt of another Person, (b) a loan, advance or capital contribution to, Guarantee Obligation or assumption of debt of, or purchase or other acquisition of any other debt or equity participation or interest in, another Person, including any partnership or joint venture interest in such other Person and any arrangement pursuant to which the investor incurs debt of the type referred to in clause (h) of the definition of "Indebtedness" set forth in this Section 1.1 in respect of such Person, or (c) the purchase or other acquisition (in one transaction or a series of transactions) of assets of another Person that constitute a business unit of, or all of a substantial part of the business being conducted by, such Person. For purposes of covenant compliance, the amount of any Investment shall be the amount actually invested, without adjustment for subsequent increases or decreases in the value of such Investment.

"Lender" as defined in the preamble hereto.

619322.12-Los Angeles Server 2A - MSW

10-06097-PCW11   Doc 132   Filed 11/18/10   Entered 11/18/10 15:51:25   Pg 30 of 33

"Lien": any mortgage, deed of trust, pledge, hypothecation, collateral assignment, deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement and any capital lease having substantially the same economic effect as any of the foregoing).

"Loan": an extension of credit by the Lender to the Borrower pursuant to Section 2.1.

"Loan Documents": this Agreement, the Security Documents, the Notes and any amendment, waiver, supplement or other modification to any of the foregoing.

"Loan Notice": a notice of a borrowing substantially in the form of Exhibit A.

"Material Adverse Effect": means (a) any fact, effect, event, change, occurrence or circumstance that, by itself or together with other facts, effects, events, changes, occurrences or circumstances, has had or would be reasonably expected to have a material and adverse effect on (1) the business, assets, liabilities (including deposit liabilities), profits, condition (financial or otherwise) or results of operations of the Borrower or its Subsidiary or the Business (as applicable), taken as a whole, or (2) the ability of the Borrower to timely consummate the transactions contemplated by this Agreement; or (b) any other act or omission which would materially impair the ability to operate the Business in the Ordinary Course; provided, however, that none of the following shall be taken into account in determining whether there has been a "Material Adverse Effect": (i) changes in GAAP or regulatory accounting requirements, (ii) changes in laws, rules or regulations of general applicability to companies in the U.S. banking industry, (iii) changes in global, national or regional political conditions or general economic or market conditions (including changes in prevailing interest rates, credit availability and liquidity, currency exchange rates, and price levels or trading volumes in the United States or foreign securities markets) affecting other companies in the U.S. banking industry, (iv) any change, in and of itself (as opposed to the facts underlying such change), in the market price or trading volume of the equity securities of the Borrower on or after the date hereof, (v) the suspension of trading in securities generally on the OTC Bulletin Board, (vi) any outbreak or escalation of hostilities, declared or undeclared acts of war or terrorism, (vii) any changes made by the Borrower or its Subsidiary in the Business or other actions taken, delayed or omitted to be taken by the Borrower or its Subsidiary at the written request or with the prior written consent of the Lender, and (viii) with respect to the Subsidiary, any pre-Closing Date restrictions or conditions imposed as a result of the Regulatory Directives to which the Subsidiary is a party as of the date of this Agreement; except, with respect to clauses (i), (ii), (iii) and (iv), to the extent that the effects of such change are materially disproportionately adverse to the business, assets, liabilities (including deposit liabilities), profits, condition (financial or otherwise) or results of operations of the Borrower and its Subsidiary or the Business (as applicable), taken as a whole, as compared to other similarly situated companies in the U.S. banking industry.

"Maturity Date": the earlier of (a) the Scheduled Maturity Date and (b) the date on which the Loan becomes due and payable pursuant to Section 7.

"Multiemployer Plan": a Plan that is a multiemployer plan as defined in Section 4001(a)(3) of ERISA.

"New York UCC": the Uniform Commercial Code as in effect from time to time in the State of New York.

"Non-Excluded Taxes": as defined in Section 2.7.

6

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 31 of 33

"Note": a promissory note in the form of Exhibit C, as it may be amended, supplemented or otherwise modified from time to time.

"Obligations": the unpaid principal of and interest on (including interest accruing after the maturity of the Loan) the Loan, and all other obligations and liabilities of the Borrower to the Lender, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with, this Agreement, any other Loan Document or any other document made, delivered or given in connection herewith or therewith, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses (including all fees, charges and disbursements of counsel to the Lender, that are required to be paid by the Borrower pursuant hereto) or otherwise.

"Order": the order of the Bankruptcy Court in the Case in substantially the form attached hereto as Exhibit D authorizing and approving this Credit Agreement and the other Loan Documents under Sections 364(c) and (d) of the Bankruptcy Code and entered at or after a final hearing, in form and substance satisfactory to the Lender and the Borrower.

"Ordinary Course of Business" or "in the Ordinary Course": the conduct of the Business in substantially the same manner as the Business was operated on the date of this Agreement, including operations in conformance with the Bank's practices and procedures as of such date.

"Other Taxes": any and all present or future stamp or documentary taxes or any other excise or property taxes, charges or similar levies arising from any payment made hereunder or from the execution, delivery or enforcement of, or otherwise with respect to, this Agreement or any other Loan Document.

"Patriot Act": the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, Title III of Pub. L. 107-56, signed into law October 26, 2001.

"PBGC": the Pension Benefit Guaranty Corporation established pursuant to Subtitle A of Title IV of ERISA (or any successor).

"Permitted Liens": as defined in the recitals hereto.

"Person": an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"Plan": at a particular time, any employee benefit plan that is covered by ERISA and in respect of which the Borrower or a Commonly Controlled Entity is (or, if such plan were terminated at such time, would under Section 4069 of ERISA be deemed to be) an "employer" as defined in Section 3(5) of ERISA.

"Plan of Reorganization": means a plan or plans or reorganization in respects of the Case.

"Professionals": as defined in Section 2.9.

"Professional Expense Cap": as defined in Section 2.9.

7

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 32 of 33

"Properties": the facilities and properties owned, leased or operated by the Borrower.

"Quarterly Financial Statements": means the unaudited consolidated financial statements of the Borrower and its Subsidiaries for the fiscal quarter ended September 30, 2010.

"Regulation U": Regulation U of the Board as in effect from time to time.

"Regulatory Directives": as defined in Section 3.1.

"Reorganization": with respect to any Multiemployer Plan, the condition that such plan is in reorganization within the meaning of Section 4241 of ERISA.

"Reportable Event": any of the events set forth in Section 4043(c) of ERISA, other than those events as to which the thirty day notice period is waived under subsections .27, .28, .29, .30, .31, .32, .34 or .35 of PBGC Reg. § 4043.

"Requirement of Law": as to any Person, the Bylaws and Certificate of Incorporation or other organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other Governmental Authority, in each case applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"Responsible Officer": means the chief executive officer, president, chief financial officer, treasurer or assistant treasurer of the Borrower or any of the other individuals designated in writing to the Lender by an existing Responsible Officer of the Borrower as an authorized signatory of any certificate or other document to be delivered hereunder.

"SEC": the Securities and Exchange Commission, any successor thereto and any analogous Governmental Authority.

"Secured Obligations" as defined in the Security Agreement.

"Scheduled Maturity Date": December 12, 2010; provided, however that upon written request by the Borrower to the Lender no less than 10 days prior to the then applicable Scheduled Maturity Date, the then applicable Scheduled Maturity Date shall be extended to December 27, 2010 but only if each of the following conditions is satisfied:

(a)     no Default or Event of Default shall have occurred and be continuing on the then applicable Scheduled Maturity Date;

(b)     as of the then applicable Scheduled Maturity Date, all representations and warranties of the Borrower in the Loan Documents shall be true and correct in all material respects (except those representations and warranties made as of an earlier date, in which case such representations and warranties shall be true and correct in all material respects as of such earlier date); and

(c)     on or immediately prior to the then applicable Scheduled Maturity Date, the Borrower shall have paid to the Lender a fee in an amount equal to 2.0% of the Loan then outstanding.

8

619322.12-Los Angeles Server 2A - MSW

10-06097-PCW11    Doc 132    Filed 11/18/10    Entered 11/18/10 15:51:25    Pg 33 of 33