Dillon E. Jackson WSBA #1539

Christopher M. Alston, WSBA #18823

FOSTER PEPPER PLLC

1111 Third Avenue, Suite 3400

Seattle, Washington  98101-3299

Telephone:  (206) 447-4400

Facsimile No.:  (206) 447-9700

Counsel for
AMERICANWEST BANCORPORATION

The Honorable Patricia C. Williams

Chapter 11

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| In Re:<br><br>AMERICANWEST<br>BANCORPORATION,<br><br>Debtor. | Case No. 10-06097-PCW-11<br><br>Chapter 11<br><br>**DEBTOR'S PLAN OF DISTRIBUTION** |

AMERICANWEST BANCORPORATION ("AWBC") proposes the following Debtor's Plan of Distribution pursuant to Chapter 11 of the Bankruptcy Code.

## ARTICLE 1   DISCLOSURE STATEMENT

AWBC has filed the Debtor's Disclosure Statement with this Plan of Distribution pursuant to Section 1125 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3016(b).  This Plan of Distribution is being disseminated to creditors for vote after Bankruptcy Court approval of the information in the Debtor's Disclosure Statement.  The Debtor's Disclosure Statement contains useful information to assist creditors in making an informed judgment about how to vote

PLAN OF DISTRIBUTION – 1 of 26

51115086.14

on this Plan of Reorganization.  Please read the Debtor's Disclosure Statement with care in evaluating the impact of this Plan of Reorganization upon your claim or interest.

## ARTICLE 2   DEFINITIONS

A term used in this Plan of Reorganization that is not defined below and is used in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code.  The following terms when used in this Plan of Reorganization have the meanings specified below.

**2.1     Additional Distributions.**

Refers to distributions to Allowed Claims made after the initial distribution made on the Distribution Date.  There may be one or more Additional Distributions.

**2.2     Administrative Expense Claim:**

A Claim entitled to priority under Section 507(a)(2) and (b) of the Bankruptcy Code, including (i) Claims arising since the Petition Date of a type described in Section 503(b) of the Bankruptcy Code, (ii) all Claims of professional persons employed pursuant to an order of the Bankruptcy Court, and (iii) all fees and charges assessed against the bankruptcy estate under 28 U.S.C. §1930.

**2.3     Allowed Claim:**

Refers to (i) any Claim which has been listed by Debtor in its Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any Claim which is not a Disputed Claim, (iii) any Ordinary Course Administrative Expense Claim which is not a Disputed Claim, (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtor or the Reorganized Debtor pursuant

51115086.14

10-06097-PCW11     Doc 179     Filed 03/15/11     Entered 03/15/11 14:23:19     Pg 2 of 26

to a Final Order of the Bankruptcy Court, (v) any Claim which, if a Disputed Claim, has been allowed by a Final Order, or (vi) any other Claim which has been allowed by a Final Order; provided, however, that any Claim allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered an Allowed Claim hereunder until such time as it qualifies as an Allowed Claim under one of the categories set forth above. Any party in interest shall have the same right to object to an amendment of Debtor's schedules as to a proof of claim, and any Claim covered by such amendment as to which an objection has been filed shall not become an Allowed Claim until allowed by a Final Order. A reference to a specific class of Claims in conjunction with the word "Allowed" (e.g., Allowed General Unsecured Claim) incorporates this definition of Allowed Claims.

**2.4     AmericanWest Bank:**

AmericanWest Bank, which was, until the Closing of the Sale, a wholly-owned subsidiary of the Debtor.

**2.5     Assets:**

All assets of the Debtor, and all property of the Debtor's bankruptcy estate under Section 541 of the Bankruptcy Code, including without limitation the stock in AmericanWest Bank.

**2.6     Ballot:**

The ballot approved by the Bankruptcy Court to accompany the Plan and Disclosure Statement which shall be sent to all Creditors entitled to vote on the Plan.

**2.7     Ballot Deadline:**

The deadline established by Order of the Bankruptcy Court for submission of Ballots on the Plan, which is **.

51115086.14

10-06097-PCW11     Doc 179     Filed 03/15/11     Entered 03/15/11 14:23:19     Pg 3 of 26

**2.8    Bankruptcy Code:**

The Bankruptcy Code as amended and set forth in Title 11 of the United States Code.

**2.9    Bankruptcy Court:**

The United States Bankruptcy Court for the Eastern District of Washington at Spokane before which the Case is pending or any other court exercising jurisdiction over the Case in the future.

**2.10    Bankruptcy Rules:**

The Federal Rules of Bankruptcy Procedure as supplemented by the Local Bankruptcy Rules for the Eastern District of Washington and any other local rules applicable to the Bankruptcy Court.

**2.11    Business Day:**

A day that is not a federal holiday, a Saturday or a Sunday.

**2.12    Case:**

The Debtor's bankruptcy case, which is presently pending in the Bankruptcy Court under Bankruptcy No. 10-06097-PCW-11.

**2.13    Claim:**

Means "claim" as defined in Section 101(5) of the Bankruptcy Code.

**2.14    Claims Bar Date or Bar Date:**

The date set by the Bankruptcy Court as the last day for filing proofs of claim in the Case, which was January 31, 2011.

**2.15    Class:**

A class of claims or interests as defined in Sections 2.12 and 2.28 of the Plan.

51115086.14

**2.16  Closing and Closing Date:**

The closing of the Sale of all of the Assets, including 100% of the stock of AmericanWest Bank, which closed on December 20, 2010.

**2.17  Committee:**

Means the Unsecured Creditors' Committee appointed by the United States Trustee in the Case.

**2.18  Confirmation Date:**

The date of the entry of the Confirmation Order on the Bankruptcy Court's docket.

**2.19  Confirmation Order:**

The order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

**2.20  Creditor:**

Means "creditor" as defined in Section 101(10) of the Bankruptcy Code.

**2.21  Debtor:**

AmericanWest Bancorporation, a Washington Corporation.

**2.22  Debtor in Possession Financing:**

The debtor in possession financing arrangement between SKBHC Hawks Nest Acquisition Corp., as lender, and Debtor as debtor, approved by the Bankruptcy Court by an order entered November 18, 2010.

**2.23  Disallowed:**

With respect to a Claim, a Claim or any portion thereof which has been disallowed by a Final Order or which becomes disallowed as a result of the claimants failure to timely file a proof of claim, as provided herein.

51115086.14

**2.24    Disclosure Statement:**

The Disclosure Statement approved by the Bankruptcy Court for submission to Creditors.

**2.25    Disputed Claim:**

A Claim scheduled as a disputed or contingent Claim, and a Claim for which a proof of claim has been filed and as to which an objection has been or hereafter is timely filed and which objection has not been withdrawn and has not been denied by a Final Order of the Bankruptcy Court.

**2.26    Distribution Agent:**

The person identified in Section 7.3 who will distribute funds payable to holders of Allowed Claims pursuant to the Plan.

**2.27    Distribution Date:**

The first Business Day that is 25 days after the later of (i) the Effective Date and (ii) entry of a Final Unstayed Order resolving the Pre-petition Tax Claim of the Internal Revenue Service.

**2.28    Distribution Fund:**

The Distribution Fund shall be comprised of the Sale Proceeds and the cash assets of the Debtor.

**2.29    Effective Date:**

The first Business Day the Confirmation Order becomes a Final Unstayed Order.

**2.30    Equity Interest:**

The interest of a shareholder in the Debtor.

**2.31    Final Decree:**

The Final Decree entered by the Bankruptcy Court closing the Case.

51115086.14

**2.32 Finally Determined:**

With respect to a Claim, a Claim which has been Allowed or Disallowed by a Final Order.

**2.33 Final Order:**

An order or judgment of the Bankruptcy Court as to which the time for appeal has expired without a notice of appeal having been filed or, if a notice of appeal has been filed, as to which such appeal has been finally resolved.

**2.34 Final Unstayed Order:**

A Final Order which has not been stayed by a court of competent jurisdiction.

**2.35 Indenture Trustees:**

U.S. Bank and Wilmington.

**2.36 Interim Payment Order:**

The Order Establishing Procedures for Payment of Interim Professional Fees and Expenses entered by the Bankruptcy Court in the Case on December 14, 2010.

**2.37 Notice and Hearing:**

"Notice and Hearing" or similar language shall mean the notice and hearing procedure provided in the applicable Bankruptcy Rules.

**2.38 Petition Date:**

Date of the filing of the petition for relief by the Debtor, which is October 28, 2010.

**2.39 Plan:**

This Plan of Reorganization in its present form or as it may be amended or modified prior to entry of the Confirmation Order and in the form confirmed by the Bankruptcy Court in the Confirmation Order. "Plan" shall also include the Plan

51115086.14

confirmed on the Confirmation Date as may be amended after the Confirmation Date in accordance with the Bankruptcy Code or order of the Bankruptcy Court.

**2.40 Proponent:**

Proponent is the Debtor, who is the person proposing confirmation of the Plan to the Bankruptcy Court.

**2.41** *Pro Rata:*

Refers to a distribution formula for distribution of funds to members of a class of creditors. The formula defining the percentage of the fund to be received by each member of the class and is expressed as: Fund Amount times the Allowed Claim divided by the Total of Allowed Claims in Class. Each member of the class will under a *pro rata* distribution receive the same percentage of their Allowed Claim.

**2.42 Reorganized Debtor:**

The Debtor, on and after the Effective Date.

**2.43 Sale:**

The sale of all of the Assets of the Debtor to SKBHC Holdings LLC and its wholly-owned subsidiary SKBHC Hawks Nest Acquisition Corp., approved by the Bankruptcy Court, which closed on December 20, 2010.

**2.44 Sale Order:**

The Order of the Bankruptcy Court approving the Sale entered on December 9, 2010.

**2.45 Sale Proceeds:**

Proceeds from the Sale paid to the Debtor in the amount of $6,500,000.

**2.46 Secured Claim:**

The secured and priority claim of SKBHC Hawks Nest Acquisition Corp. for the Debtor in Possession Financing.

51115086.14

**2.47 Subordinated Claim:**

A Claim against the Debtor held by one or more of the Trusts that are related to the Trust Preferred Securities ("TruPS") that are further defined and discussed in the Disclosure Statement. In this Plan Subordinated Claims are classified as Unsecured Claims.

**2.48 Tax Claim:**

Any Claim held by a governmental entity against the Debtor.

**2.49 Trusts**

The following trusts formed by the Debtor or its predecessor: AmericanWest Statutory Trust I, AmericanWest Statutory Trust II, AmericanWest Statutory Trust III, and Columbia Trust Statutory Trust I.

**2.50 Unclassified Claim:**

A Claim other than a Claim of a kind specified in Section 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code.

**2.51 Unsecured Claim:**

A Claim against the Debtor that arose before the Petition Date and is not an Administrative Expense Claim, Tax Claim on a Secured Claim. Unsecured Claims include Subordinated Claims.

**2.52 U.S. Bank:**

U.S. Bank National Association, as indenture trustee and institutional trustee.

**2.53 Wilmington:**

Wilmington Trust Company, as indenture trustee and institutional trustee.

51115086.14

## ARTICLE 3   PAYMENT OF UNCLASSIFIED CLAIMS

**3.1    Administrative Expense Claims:**

### 3.1.1   Ordinary Course Administrative Expense Claims.

An Administrative Expense Claim that has occurred in the ordinary course of the business of the Debtor, other than Professional Fee Administrative Claims, shall be deemed allowed and paid by the Debtor in the ordinary course in the amounts reflected on the books and records of the Debtor.  Certain of such claims which are subject to disclosure filings or Bankruptcy Court order shall be paid in accordance with such disclosure or order.

### 3.1.2   Administrative Expense Claims Bar Date.

Any person or entity holding an Administrative Expense Claim which has not been paid by the Debtor as of the Confirmation Date (except for professionals whose employment has been approved by the Bankruptcy Court) shall file with the Bankruptcy Court and serve on the Debtor a Proof of Claim no later than twenty-one (21) days after the Confirmation Date.  Failure to file and serve an Administrative Expense Claim by this date shall conclusively bar the claimant from asserting its Administrative Expense Claim, and the Administrative Expense Claim shall be Disallowed and forever discharged.

### 3.1.3   Professional Fee Administrative Expense Claims.

All professional fees and expenses for professionals whose employment has been approved by the Bankruptcy Court may be paid on an interim basis in accordance with the Interim Payment Order.  Final requests for payment of fees and reimbursement of expenses shall be allowed and paid as approved by the Bankruptcy Court, first from any advance fee deposits held by the professional fee claimant, and then in full on the later of (i) the Distribution Date, and (ii) 15 days after Bankruptcy Court approval of the fees and expenses.

51115086.14

### 3.1.4  Professional Fee Bar Date.

Applications for final awards of compensation for services and expenses for professionals incurred prior to the Effective Date shall be filed with the Bankruptcy Court and served on the Debtor <u>on or before twenty-one (21) days after the Effective Date</u>.  Failure to file and serve a final application by this date shall conclusively bar the claimant from asserting its Administrative Expense Claim for compensation and expenses, and the Administrative Expense Claim shall be Disallowed and forever discharged.

### 3.1.5  Post-Confirmation Professional Fees.

Professionals whose employment has been approved by the Bankruptcy Court and who continue to provide services to the Reorganized Debtor after the Effective Date shall be compensated and reimbursed for their expenses by filing and serving a notice of interim compensation and reimbursement of expenses on a monthly basis in the manner describe in the Interim Payment Order, and shall be entitled to payment from the Reorganized Debtor on a monthly basis in accordance with the Interim Payment Order.  The Interim Payment Order shall be deemed modified so that payment of such post-confirmation professional fees and expenses shall be subject neither to a holdback nor a further order of the Bankruptcy Court, absent an objection that is filed and served by a party in interest in the manner provided in the Interim Payment Order.  If a proper objection is filed and served, then the objection shall be resolved in the manner prescribed by the Interim Payment Order.

### 3.2  Priority Tax Claims:

On the Distribution Date, each holder of an Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code shall be paid in full or on

51115086.14

a *pro rata* basis if there are insufficient funds in the Distribution Fund to pay all Priority Tax Claims in full on the Distribution Date.

## ARTICLE 4   CLASSIFICATION OF CLAIMS AND INTERESTS

The claims and interests are classified as follows:

Class 1:     Secured Claims.

Class 2:     Unsecured Claims.

Class 3:     Equity Interests in the Debtor.

## ARTICLE 5   TREATMENT OF CLAIMS

**5.1    Class 1:  Secured Claims.**

**5.1.1   Treatment.**

Holders of Allowed Secured Claims, if any, shall be paid in full in accordance with the loan documents on or before the Distribution Date.

**5.1.2   Impairment.**

Class 1 Claims are unimpaired.

**5.2    Class 2:  Unsecured Claims.**

**5.2.1   Treatment.**

On the Distribution Date, each holder of an Allowed Unsecured Claim shall be paid *pro rata* from the sums remaining in the Distribution Fund after payment in full of all Unclassified Claims and the Claims in Class 1, and less any reserves for Disputed Claims or estimated remaining Administrative Expenses for distribution to Wilmington and U.S. Bank, each as trustee under the respective indentures, who shall then be responsible for further distribution of such funds in accordance with the terms of this plan, the applicable indentures and trust documents.  For clarification the failure of either Wilmington or U.S. Bank to seek allowance of any of their fees and expenses as Administrative Expenses under the Plan shall not prejudice or impair each of their ability to recover such fees and

PLAN OF DISTRIBUTION – 12 of 26

expenses in accordance with the distribution provisions of the respective applicable indentures and trust documents.

The Trusts shall not be obligated to pay any amounts that may be payable to the Debtor under the trust agreements, and the Debtor waives any right or claim to any payment from the Trusts.

### 5.2.2  Impairment.

Class 2 Claims are impaired.

## 5.3  Class 3:  Equity Interests.

### 5.3.1  Treatment.

Holders of Equity Interests shall receive nothing on account of their equity interests, and all of the issued and outstanding stock of the Debtor shall be cancelled as of the Effective Date.

### 5.3.2  Impairment.

Class 3 interests are impaired.

### 5.3.3  Plan Rejection.

Because this class will receive no value, this Class 3 is deemed to have voted against confirmation of the Plan.

## ARTICLE 6   VALIDITY OF PRIOR ORDERS

Except as provided in the Plan, the Confirmation Order, or other order entered by the Bankruptcy Court, this Plan does not alter or amend the prior orders entered by the Bankruptcy Court in this case, including without limitation the Sale Order and the Debtor in Possession Financing Order entered November 18, 2010.

## ARTICLE 7   MEANS FOR EXECUTION OF THE PLAN

## 7.1  Organization of Debtor.

After the Effective Date and after distributions under the Plan have been commenced, the Bylaws and Articles of Incorporation of the Reorganized Debtor

51115086.14

shall be modified such that the Board of Directors shall be reduced to one person and the number of shareholders shall be reduced to one person. The sole director and shareholder shall be Patrick J. Rusnak to serve until the dissolution and winding up of the Debtor has been completed.

**7.2    Dissolution of Pre-Confirmation Committee.**

Upon the Effective Date, the Committee shall be dissolved and shall have no duties, power, obligations, or authority.

**7.3    Distribution Agent.**

Patrick J. Rusnak shall serve as the Distribution Agent. On the Distribution Date, or as soon as practicable thereafter, the Distribution Agent shall commence distributions to holders of Allowed Claims as provided in the Plan. The Distribution Agent shall be entitled to compensation at the rate of $250 per hour.

**7.4    Reservation of Funds—Additional Distributions.**

As of the Distribution Date, the Reorganized Debtor shall reserve sufficient funds to adequately provide for anticipated costs of administration and disputed Claims. As disputed Claims are resolved, the reserved funds freed by such resolution shall be distributed as under the Plan. There may be one or more Additional Distributions.

**7.5    Post-Confirmation Management.**

The Board of Directors will be reduced to one person. After confirmation of the Plan, the Debtor will employ the following people:

1.    Patrick J. Rusnak as the Chief Executive Officer and President, who will be primarily responsible for executing the Plan and winding up the Reorganized Debtor's affairs. Mr. Rusnak will be compensated at the rate of $250 per hour.

2.     Jay B. Simmons, as the Executive Vice President, General Counsel and Secretary, who will assist with the execution of the Plan and the winding up of the Reorganized Debtor's affairs, and will coordinate the work of the professionals providing services to the Reorganized Debtor.  Mr. Simmons will be compensated at the rate of $200 per hour.

3.     Shelly Krasselt, as the Principal Accounting Officer, who will provide necessary accounting functions, prepare financial reports, and assist with the execution of the Plan and the winding up of the Reorganized Debtor's affairs.  Ms. Krasselt will be compensated at the rate of $100 per hour.

The above individuals will be paid by the Distribution Agent on a monthly basis.  The post confirmation financial reports shall detail the compensation paid for these services.

**7.6     Source of Funds.**

Funds for the distributions proposed under the Plan are the Sale Proceeds and any additional cash held in the Debtor's bank accounts.

**7.7     Tax Determination.**

    **7.7.1   Pre-Petition Tax Claims.**

The Debtor will either (i) proceed under Section 505(a) of the Bankruptcy Code to obtain a Final Order that all of the tax returns filed by the Debtor prior to the Petition Date are accepted, final and no longer subject to further review by the Internal Revenue Service, or (ii) reach a final resolution on the pre-petition Tax Claims held by the Internal Revenue Service, which final resolution shall be approved by an order of the Bankruptcy Court without notice if no Claim is allowed and only after notice to all parties who have requested special notice in the Case and an opportunity for a hearing if a Claim is allowed.  Distributions under the Plan will not be made prior to April 27, 2011 and either 1) entry of a Final

51115086.14

Unstayed Order resolving the pre-petition Tax Claims of the Internal Revenue Service or 2) withdrawal of the IRS claims filed in the Case.

### 7.7.2 Post-Petition Taxes.

Promptly upon the filing of any returns for post-petition periods, the Debtor will seek an accelerated determination that the returns are accepted, final and no longer subject to further review under the procedures provided in Section 505(c) of the Bankruptcy Code.

### 7.7.3 Reserves.

Until final determination of the pre- and post-petition Tax Claims of the Internal Revenue Service, the Reorganized Debtor shall retain sufficient reserves that in the opinion of its tax and legal advisors are sufficient to respond to any liability in full. If any party in interest disputes the necessity and/or extent of the amounts held in reserves, the party in interest shall be entitled seek an order modifying the amount on motion and notice in accordance with the Bankruptcy Rules.

## 7.8 Post-Effective Date Administrative Expenses.

A reserve sufficient to complete outstanding legal and administrative work to resolve all claims, dissolve the Reorganized Debtor and provide communication to parties in interest shall be established. Any excess from the reserve after the cessation of all activity will be distributed first to holders of any unpaid Unclassified Claims on a *pro rata* basis until holders of such claims are paid in full, then to holders of any unpaid Class 2 Claims on a *pro rata* basis until holders of such claims are paid in full, then to holders of Class 3 Claims on a *pro rata* basis.

51115086.14

**7.9    Actions On or After the Effective Date.**

On the Effective Date:

7.9.1   The Reorganized Debtor and the Distribution Agent shall be responsible for implementing the Plan.

7.9.2   All of the Assets including without limitation all causes of action under Chapter V of the Bankruptcy Code, shall vest in the Reorganized Debtor free and clear of all liens, security interests and claims, except as otherwise expressly provided for in the Plan.  After distributions under the Plan competed, it is not contemplated that the Debtor will have any assets remaining other then funds for windup expenses.

7.9.3   The Distribution Agent shall comply with the Plan and make the distributions required by the Plan.

7.9.4   In the event of a dispute on any Claim, the amount of such Claim that is not subject to dispute shall be an Allowed Claim and distribution made thereon.

**7.10    Post-Confirmation Consultation.**

After the Confirmation Date, the Distribution Agent and the Reorganized Debtor will continue to consult with the Indenture Trustees on Administrative Expenses, settlement of contested claims, and any post confirmation litigation in which the Reorganized Debtor is a Party.  The Indenture Trustees will be advised of such activities, receive notice of any action requiring a Court Order and will have the right to object or otherwise be heard on such actions.

**7.11    Cancellation of Securities.**

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates, debentures, agreements, indentures, declarations of trust, guarantees and other documents evidencing the Claims related to the Trusts and Equity Interests shall be deemed automatically canceled,

shall be of no further force, whether surrendered for cancellation or otherwise; provided, that the indentures and other trust documents related to the Trusts shall survive solely for the purpose of: (i) allowing the applicable Indenture Trustees to receive distributions on account of Trust Claims and make further distributions in accordance with this Plan and the applicable indentures and trust documents and (ii) permitting the applicable Indenture Trustees to exercise any lien rights it may have against property held or collected by such Indenture Trustee to deduct its reasonable fees, costs and expenses from any amounts held by it, in accordance with the applicable indentures and trust documents, and for indemnification as provided therein. Immediately upon final distribution, the Trusts shall be canceled, dissolved and terminated and each Indenture Trustee shall be discharged of any obligations to the Debtor or any other Person under the applicable indentures, trust documents and guarantees.

**7.12    Distributions on Account of Trust Claims/Distribution Record Date.**

The Debtor shall make any distributions on account of Claims related to the Trusts to the applicable Indenture Trustee. The applicable Indenture Trustee shall make further distribution of such amounts, after deduction for its reasonable fees, costs and expenses, in accordance with this Plan and the provisions of the indentures and trust documents to holders of record as of the Confirmation Date.

**ARTICLE 8   TREATMENT OF EXECUTORY CONTRACTS**

**8.1    Assumption and Rejection.**

The Debtor shall assume the equipment leases with CIT Communications Finance Corporation identified in Claim #7 filed in this case. Debtor will assign the leases to AmericanWest Bank. The leases are not in default, no cure amounts are due and assumption by AmericanWest Bank which is already a party under the leases as amended shall constitute full compliance with all terms of the Bankruptcy

10-06097-PCW11   Doc 179   Filed 03/15/11   Entered 03/15/11 14:23:19   Pg 18 of 26

Code relating to assumption and assignment of executory contracts including adequate assurance of future performance.

Upon the Effective Date and without any further order of the Bankruptcy Court, the Debtor shall be deemed to have rejected all executory contracts and unexpired leases not previously assumed or specifically assumed under the Plan.

**8.2 Rejection Claims.**

Any person or entity holding a Claim based upon the rejection of an executory contract or unexpired lease must file with the Bankruptcy Court and serve on the Debtor a Proof of Claim <u>within twenty-one (21) days after the Confirmation Date</u>.  The failure to file a Proof of Claim by this deadline will result in such Claim being Disallowed and forever discharged.

## ARTICLE 9    CLAIMS OBJECTIONS

The Reorganized Debtor and any other party in interest shall have thirty (30) days following the Confirmation Date to file an objection to any Claim with the Bankruptcy Court.  All Claim objections shall be determined by the Bankruptcy Court after notice to the person whose claim is being objected to and opportunity for a hearing in accordance with the Bankruptcy Rules.  The Debtor shall reserve 115% of the amount of any disputed claim pending determination of the dispute by settlement or by Order of the Bankruptcy Court.

## ARTICLE 10  UNCLAIMED FUNDS

The Reorganized Debtor may stop payment on any check made in payment on an Allowed Claim or Administrative Expense under the Plan any time 60 days after the check was mailed.  The Reorganized Debtor may rely on the address set forth in each proof of claim (or if there is no proof of claim, the address set forth in the bankruptcy schedules) unless the creditor provides the Reorganized Debtor with a written notice of a change in the creditor's address.

10-06097-PCW11    Doc 179    Filed 03/15/11    Entered 03/15/11 14:23:19    Pg 19 of 26

## ARTICLE 11 REPORTS AND STATUTORY FEES

Until the Case is closed, the Reorganized Debtor shall (i) file post-confirmation reports consistent with Local Bankruptcy Rule 2015-1(c), and (ii) pay all quarterly fees due and payable to the Office of the United States Trustee.

## ARTICLE 12  MODIFICATION OF THE PLAN

The Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor or the Reorganized Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effect of the Plan.

## ARTICLE 13  EFFECT OF CONFIRMATION

**13.1  Discharge.**

Allowed Claims that are paid in full are discharged and any liability arising therefrom shall be extinguished completely.

**13.2  Injunction.**

Allowed Claims that are not paid in full shall not be discharged, but all holders of all Claims, whether or not they are paid in full, will be enjoined from enforcement of any claim or taking any action against the Reorganized Debtor or against property of the estate being administered under the Plan to collect their debts from or against the Reorganized Debtor except as specifically authorized by the Plan, or to enforce the terms of the Plan.

All holders of Equity Interests also shall be enjoined from enforcement of any claim or taking any action against the Reorganized Debtor or against property

PLAN OF DISTRIBUTION – 20 of 26

of the estate being administered under the Plan except as specifically authorized by the Plan, or to enforce the terms of the Plan.

**13.3    Exculpation and Limitation of Liability.**

Neither the Debtor, the Reorganized Debtor, the Committee, nor any of their respective present or former members, managers, officers, directors, employees, advisors, attorneys, or agents for them acting in such capacity will have or incur any liability to, or be subject to any right of action by, any holder of a Claim or Equity Interest or any other party-in-interest or any of their respective agents, employees, representatives, financial advisors, attorneys, affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Case, the pursuit of confirmation of the Plan, or the administration of the Plan, or the property to be distributed under the Plan, except for their willful misconduct; and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Case.

## ARTICLE 14  RETENTION OF JURISDICTION

**14.1    Generally.**

Following the Confirmation Date, the Bankruptcy Court shall retain jurisdiction over the Reorganized Debtor until the Plan is fully consummated and an order closing the Case is entered by the Bankruptcy Court.  The Bankruptcy Court's retained jurisdiction shall give it authority to hear matters for purposes of administering the Plan, including without limitation:

1.    To determine all adversary proceedings, applications, motions and contested matters instituted prior to the closing of the Case, including Claims objections;

51115086.14

2. To ensure that distributions are accomplished as provided in the Plan and, if requested, to provide orders approving distributions;

3. To determine all objections to Administrative Claims filed both before and after the Confirmation Date;

4. To determine any objection to a Claim or any litigation relating to the allowance of the Claim;

5. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

6. To issue orders in aid of execution of the Plan and to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any entity;

7. To consider all modifications of the Plan, to cure any defect or omission in the Plan, or to reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, necessary to carry out the purpose and intent of the Plan including, without limitation, the Confirmation Order;

8. To determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

9. To determine any disputes arising in connection with the interpretation, implementation, execution or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

10. To determine all matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

10-06097-PCW11     Doc 179     Filed 03/15/11     Entered 03/15/11 14:23:19     Pg 22 of 26

11.     To determine any other matter not inconsistent with the Bankruptcy Code; and

12.     To enter a Final Decree.

**14.2    Reopening Not a Prerequisite to Jurisdiction.**

Exercise of the Bankruptcy Court's continuing jurisdiction on matters related to the Case or the Plan shall not require that the Case be formally reopened. However, the Bankruptcy Court may order a closed case to be reopened in its discretion.

**ARTICLE 15  EVENTS OF DEFAULT**

In the event Debtor defaults under the provisions of the Plan, any Creditor desiring to assert such a default shall serve on the Debtor written notice of the alleged default.  The Debtor shall have 30 days from receipt of the written notice in which to cure the default.  If a default is not cured within the 30-day notice period, the Creditor providing such notice of default may thereafter file with the Bankruptcy Court and serve upon Debtor and its counsel a motion requesting relief.  The Bankruptcy Court, upon a finding of a material default, shall issue an order as appropriate under the circumstances.  If the Creditor is the Internal Revenue Service, then it may revert to its ordinary administrative collection procedures after giving 30 days' written notice of the default as provided herein.

**ARTICLE 16  GENERAL PROVISIONS**

**16.1    Substantial Consummation.**

The Plan shall be deemed substantially consummated when the initial distributions under the plan have been made and reserves for disputed claims, post petition administrative expenses and expenses of dissolution and winding up have been established.

51115086.14

**16.2  Stay of Confirmation Order Shall Not Apply.**

The stay of enforceability of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall not apply, and the Confirmation Order shall be enforceable according to its terms immediately upon entry absent further order of a court of competent jurisdiction.

**16.3  Governing Law**

The construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Washington without giving effect to its conflicts of law principles, except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document to which the Debtor is a party and that has been approved by the Bankruptcy Court.

**16.4  Notices.**

Any notice required or permitted to be provided under the Plan shall be in writing and served by regular first class mail, overnight delivery, or hand-delivery to the parties set forth below:

For the Debtor and Reorganized Debtor:

Dillon E. Jackson
Foster Pepper PLLC
1111 Third Avenue, Suite 3400
Seattle, WA  98101-3299
Phone:  (206) 447-4400
Fax:  (206) 447-9700

-and-

G. Larry Engel
Morrison & Foerster
425 Market Street

PLAN OF DISTRIBUTION – 24 of 26

51115086.14

San Francisco, CA  94105
Phone:  (415) 268-7000
Fax:  (415) 268-7522

**16.5   Final Decree.**

After the Plan has been substantially consummated, the Reorganized Debtor may file an application for a Final Decree showing that the Plan has been substantially consummated.  The Reorganized Debtor will  serve the application for a Final Decree on the United States Trustee, the Internal Revenue Service, and on parties that have filed requests for special notice in the Case.  After service of the notice and an opportunity for a hearing in accordance with the Bankruptcy Rules, an order approving the Reorganized Debtor's final report, entering a Final Decree and closing the Reorganization Case may be entered.

**16.6   Headings.**

The headings of the articles, paragraphs, and section of the Plan are inserted for convenience only and will not affect the interpretation hereof.

**16.7   Successors and Assigns.**

The rights, benefits and obligations of any person named or referred to in the Plan shall be binding upon, and will inure to the benefit of, the heirs, executors, administrators, successors or assigns of such Person.

**16.8   Corporate Dissolution.**

After the Effective Date, the Reorganized Debtor may seek to dissolution and winding up of its affairs under the applicable provisions of Washington law without further order of the Court, provide that the Reorganized Debtor may seek such Bankruptcy Court orders as may be necessary to aid in the completion of its dissolution and winding up.

51115086.14

## ARTICLE 17  REQUEST FOR CONFIRMATION

The Debtor requests entry of a Confirmation Order pursuant to Section 1129 of the Bankruptcy Code.  As to the Class of Interests, Debtor requests confirmation over the deemed rejected Class of Interests pursuant to 1129(b).

DATED this _____ day of March, 2011.

**AmericanWest Bancorporation,
Debtor and Debtor in Possession**

*s/ Patrick J. Rusnak*

_____
Patrick J. Rusnak, CEO
AmericanWest Bancorporation

51115086.14